##### FOR THE

## COUNTY OF ADDISON.

#### JANUARY TERM, 1849.

---

PRESENT,

Hon. ISAAC F. REDFIELD,  
Hon. DANIEL KELLOGG,  
Hon. HILAND HALL, } ASSISTANT JUDGES.  
Hon. LUKE P. POLAND,

---

## WILLIAM HAZARD *v.* JULIA A. SMITH.

If A. execute promissory notes to B., which include usurious interest, and subsequently contract with C., for a valuable consideration, to pay those notes, and C. accordingly executes his own notes to B. in lieu of those executed by A., and subsequently pays the notes thus executed by him, this will not entitle him to sustain an action against B.,to recover the excess of interest, so paid by him, above the legal rate;—but the action should be brought in the name of A. But if the notes of C., in such case, are merely substituted for those of A., without the intervention of any new and distinct consideration, they will be usurious; and C., upon paying them, will be entitled to recover from B. the amount of usurious interest included.

Whether, in such case, the notes of C. were substituted for those of A. upon a full consideration received by C. from A., or without consideration and as a mere substitution of one usurious contract for another, is a question of fact, to be determined by the jury. And, if the evidence is conflicting, it is the duty of the court to give to the jury full and explicit instructions, directing their attention

to the different aspects of the case, as presented by the testimony, and to the particular facts which they must find, in order to entitle the plaintiff to their verdict; and if the court omit so to charge the jury, the judgment will be reversed.

Although a party may not be entitled to the particular charge to the jury which he requests, yet it is the duty of the court to charge as the facts in the case require.

INDEBITATUS ASSUMPSIT for money had and received. Plea, the general issue, and trial by jury, December Term, 1845,—BENNETT, J., presiding.

On trial the plaintiff introduced one Sholes as a witness, who testified, that on the first day of May, 1841, he borrowed of Ira Smith $3000, for which he agreed to pay nine *per cent.* interest for three years; that he executed to Smith four promissory notes of that date, one for $3000, the principal, and three for $270 each, being for the interest, computed at nine *per cent.*; that the note for $3000 was made payable to Smith, or order, May 1, 1844, without interest, and the other three notes were also made payable to Smith, without interest,—one May 1, 1842, one May 1, 1843, and one May 1, 1844; that all these notes were secured by a mortgage of the farm which the witness then owned; that in February, 1842, he sold and conveyed his farm to the plaintiff, and, in consideration thereof, the plaintiff agreed with him, that he would pay and take up, for him, the four notes above named and procure the witness to be discharged therefrom; that in pursuance of this agreement the plaintiff went to Smith, February 22, 1842, and agreed with him to take the plaintiff's notes, in lieu of those executed by Sholes, and for the same amount and payable at the same time; that accordingly the plaintiff executed his notes to Smith, and received from Smith the four notes, which Sholes had executed, and delivered them to Sholes, and secured the payment of the new notes by mortgage of the same premises which Sholes had previously mortgaged; and that, as between Sholes and the plaintiff, Sholes allowed to the plaintiff, in adjusting the matter between them, only the note for $3000, and the note for $270 which first fell due,—which was according to the agreement made between them, when Sholes sold his farm to the plaintiff. The four notes executed by Sholes were produced, on the trial, by the plaintiff.

Another witness was introduced, whose testimony tended to prove, that the plaintiff agreed with Sholes, that he would take up the four notes executed by Sholes to Smith. The plaintiff also introduced another witness, who testified, that, at the time the plaintiff applied to Smith, to ascertain whether he would exchange the four notes executed by Sholes for the notes of the plaintiff, Smith stated that he would, but that the plaintiff must pay him the same rate of interest, which Sholes had agreed to pay, and must secure him on the same farm, and that he would meet the plaintiff at the town clerk's office the next morning and complete the business; that the parties did meet at the town clerk's office the next day; and that the witness then saw the plaintiff execute his four notes to Smith, and knew that the plaintiff had agreed to pay Smith nine *per cent.* for the said sum of three thousand dollars.

It was admitted, that the plaintiff, on the 19th of December, 1844, paid to the defendant, who was executrix of the estate of Ira Smith, then deceased, the amount of the note for $3000, and the amount of the two notes, for $270 each, which became due in 1843 and 1844;—and evidence was given on the part of the plaintiff, which tended to prove, that, at the time he made such payment, he gave notice to the defendant, that he should endeavor to recover back the amount of usurious interest paid. The note for $270, which became due May 1, 1842, had also been paid by the plaintiff, and was produced by him upon the trial.

The defendant gave in evidence the will of Ira Smith, duly approved by the probate court, and also the appointment of commissioners upon his estate, and their report to the probate court.

The defendant requested the court to instruct the jury, that the facts testified to by the witnesses constituted a payment of the notes by Sholes, and not by the plaintiff, and that the plaintiff could not sustain this suit;—that, if the jury found, that Sholes had given his notes to Smith, as detailed in his testimony, and that the plaintiff agreed with Sholes, for a valuable consideration, received by him from Sholes, to pay the four notes executed by Sholes, and procure Sholes to be discharged therefrom, and that, in pursuance of such contract, he did take up the notes executed by Sholes and give his own notes for the same amount and payable at the same times, that this constituted a payment by Sholes, and the plaintiff could not sus-

Hazard *v.* Smith.

tain this suit,—and that it was immaterial, whether the plaintiff received a consideration equal to the amount of the notes he so agreed to pay and take up, or a less sum;—and that this action, if it could be sustained, should have been brought against the defendant in her capacity as executrix of the estate of Ira Smith.

But the court instructed the jury, that the facts testified to by the witnesses, if believed, entitled the plaintiff to recover one third of the two last notes for $270 each, and the interest thereon from the time they fell due to the time of the payment by the plaintiff, and interest, to the time of trial, upon the amount paid by him.

Verdict for plaintiff. Exceptions by defendant.

*H. Hale* and *A. Peck* for defendant.

1. When a third person, upon an agreement with the borrower, upon valuable consideration, pays a usurious note, or gives his own note therefor to the lender, in discharge of the borrower, he can neither defend against nor recover back from the lender, on the ground of usury. *Scott* v. *Lewis*, 2 Conn. 132. *Church* v. *Tomlinson*, Ib. 134. *Botsford* v. *Sanford*, Ib. 276. *Bearce* v. *Barstow*, 9 Mass. 45. *Davis* v. *Hoy*, 2 Aik. 303. *Wales* v. *Webb*, 5 Conn. 154.

2. It was a part of the contract of purchase, between the plaintiff and Sholes, that the plaintiff should pay all of the four notes executed by Sholes; and the adequacy, or inadequacy of the consideration for this agreement cannot be inquired into in this suit. The consideration was not money, but land, the valuation of which by the parties was arbitrary.

3. The defence of usury is a personal privilege, for the protection of the borrower, and is a defence which the borrower may waive; *Bearce* v. *Barstow*, 9 Mass. 45; *Boardman* v. *Roe*, 13 Ib. 104; 2 Conn. 276; and Sholes having elected to waive such defence, and having contracted with the plaintiff to pay the debt, the plaintiff does not stand in a relation, which entitles him to set up such defence, or recover back the payment made by him, on the ground of usury.

4. Neither the purchaser of an incumbered estate, under an agreement to pay the prior mortgage, nor the purchaser of an equity of redemption, without such agreement, can resist the pay-

mennt of such prior mortgage on the ground of usury in the mortgage debt.  *Green* v. *Kemp*, 13 Mass. 515.  *Post* v. *Dart et al.*, 8 Paige 639.  *Shufelt* v. *Shufelt*, 9 Paige 139.  *Cole* v. *Savage*, 10 Paige 583.  5 Johns. Ch. R. 557.  *Bridge* v. *Hubbard*, 15 Mass. 103.  The plaintiff stands in the relation of such purchaser, having expressly agreed to pay the mortgage debt.

5.  If the plaintiff had paid Sholes' notes to Smith at Sholes' request, without any consideration, even, and the notes so paid had been void, the plaintiff would have his right of action against Sholes for the amount so paid, and Sholes could have pursued Smith, as it would have been, in law, a payment by Sholes; *Pawle* v. *Gunn*, 4 Bing. N. C. 445, [33 E. C. L. 406;] and the receipt of a partial or full consideration by the plaintiff from Sholes cannot vary the principal in any other way, except to strengthen Sholes' right of action against Smith.

6.  The case should have been submitted to the jury, to find what the real contract was.

*E. D. & F. E. Woodbridge* and *J. Pierpoint* for plaintiff.

The case shows, that the $3000 note and the note for $270 which first became due were allowed by Sholes to the plaintiff towards the price of the farm; and that the last two notes, for $270 each, which were paid by the plaintiff to the defendant,—the usurious portion of, which the plaintiff now seeks to recover,—were not allowed by Sholes to the plaintiff, as any part of the consideration for the farm. Hence the payment by the plaintiff was not a payment by Sholes, or for his benefit, but was made in pursuance of an original contract between the plaintiff and Smith.

The opinion of the court was delivered by

KELLOGG, J.   That the notes executed by Sholes to Smith were usurious is unquestionable, and so it was conceded in the argument; and if the notes were paid by Sholes, he could undoubtedly maintain a suit to recover the excess of interest, so paid.  This right of recovery, however, was a privilege, which he might assert, or waive, at his pleasure; and if he contracted with the plaintiff, for a valuable consideration, to pay the notes, such payment would not entitle the plaintiff to recover the excess of interest.  For it by no means

follows, that, because the notes of Sholes were usurious, the notes of the plaintiff, executed to Smith upon the surrender of Sholes's notes, were also infected with usury. If, however, the last notes were merely substituted for the former, without the intervention of any new and distinct consideration, they would be usurious. But if they were given by reason of the conveyance of the farm by Sholes, they were given upon a new consideration, uninfected by usury. *Scott* v. *Lewis*, 2 Conn. 135.

Hence it became important, in the trial of the case, to ascertain under what circumstances the plaintiff paid the notes in question,— the Sholes notes. If, by the plaintiff's contract with Sholes for the purchase of the farm, there was an unqualified undertaking on the part of the plaintiff to pay the notes to Smith, in consideration of the convenance, we think it quite clear, that such payment would, in contemplation of law, be the payment of Sholes, he having furnished the plaintiff the means, or an equivalent, for paying the same ; and in that event Sholes would be the person entitled to recover the excess of interest. And such, the defendant insists, was the character of the contract.

If, however, the arrangement and agreement between the plaintiff and Sholes were such, that the plaintiff only undertook and assumed the payment of the note of $3000 and the note of $270, given for the first year's interest, (and perhaps the testimony tended to prove such to have been the understanding of the parties, for it appears, that the payment of those two notes was all that was allowed the plaintiff towards the purchase money of the farm,) and that, as to the rest of the notes, he merely undertook to indemnify Sholes against the payment of them, and that, in pursuance of that arrangement, he contracted with Smith to pay him interest upon the note of $3000 for the remaining time it had to run, at the stipulated rate of nine *per cent.*, and that he executed the two last notes for such interest, not having received any consideration from Sholes for the payment of the same, then said last two interest notes became and were substituted for the two corresponding notes made by Sholes, and were equally as much tainted with usury, as the notes for which they were substituted. Such, the plaintiff claims, was the true character of the transaction. And in the event of such being found to be the contract, we think the plaintiff might well sustain the present suit. These, however,

were questions of fact, proper for the consideration of the jury, under suitable instructions from the court, and were material in the finding of the issue submitted to them. It is apparent, that the testimony of the witness Sholes, as detailed in the bill of exceptions, tends to prove, that, by the contract between Sholes and the plaintiff, the plaintiff, *in consideration* of the conveyance of the farm, undertook *to pay* and *take up*, for Sholes, the four notes which Smith held against him. It is upon this testimony the defendant is supposed to have based her second request to the court for instructions to the jury ; and if she was not entitled to the particular charge requested, she was, at least, entitled to such a charge, as the facts in the case required. The court declined to charge as requested, and simply directed the jury, that, if the facts testified to by the witnesses were believed, the plaintiff was entitled to recover. This direction, we think, was too general. It was not sufficiently definite, to direct the jury to the particular facts they must find, in order to entitle the plaintiff to their verdict. The court should have called the attention of the jury to the different aspects of the case, as presented by the testimony. The case required full and explicit instructions to the jury ; and in consequence of the neglect of the court so to instruct them, they might and would be very liable to found their verdict upon an incorrect view of the case. The direction to the jury was virtually a direction to return a verdict for the plaintiff. We think it was an improper direction, and for this cause the judgment of the county court is reversed and the case remanded for another trial.