(December 24, 1902.)

## MADSEN v. WHITMAN.

### [71 Pac. 152.]

PREMIUMS FOR MAKING LOANS—USURY—PAYMENTS.—Premiums exacted for making loans and retained, or secured by mortgage, are unlawful interest, when, added to the rate provided by the contract of indebtedness, they make a rate greater than the statutes authorize, and payments upon such premiums, and all payments, whether upon interest or principal, must be applied to reducing the principal of the debt.

USURIOUS CONTRACT—ATTEMPT TO PURGE SAME—THIRD PARTIES.—Two usurious loans were made, secured by trust deeds; the debtor made another loan from a third party and gave the latter a mortgage upon the property named in the trust deeds; afterward the debtor and creditor came together and made an agreement for the purpose of removing the usurious character of the trust deeds and debts secured by them; payments were made by the debtor on interest and principal, added to the premiums retained in the first instance by the creditor, reduced the principal of the two debts to a small amount, for which the trial court gave judgment of foreclosure. *Held*, that the trust deeds only secured the principal of the debts, and that the subsequent agreement did not extend the liens of the trust deeds, especially as against the junior mortgagee, and that the judgment should be affirmed.

(Syllabus by the court.)

APPEAL from District Court, Bear Lake County.

Alfred Budge and E. E. Chalmers, for Appellant.

The general question is: Was this suit brought upon a contract which was usurious at the commencement of the action? The old contract: The defendant Whitman testified that the total payments were twenty-seven dollars per month on the entire loan of $1,800. This would be just eighteen per cent per annum on the $1,800, a rate which was at that time (1894, or prior thereto) legal and authorized by the interest laws of Idaho. When the Whitmans paid this, they were simply paying the interest on the loan. They had the $1,800 all the time, less commission, which had a consideration of their own. What did it matter to the defendants whether the payments were applied on the principal or interest, or both. They expected and intended to pay the notes and interest. If they had gone on and paid at maturity, they would, in this respect, have paid the principal and a rate of interest which was lawful. If the red tape connected with the contracts of building and loan associations is to be eliminated, let it be done thoroughly and the transactions reduced to a business basis on behalf of both parties. The premium notes and mortgages were and constituted a separate transaction and were supported by a consideration of their own, viz., the speedy obtaining of the loans. But, in our view of the case, this is immaterial. The only thing remaining, then, to make the transaction between the parties to this action usurious is the fact that to the $800 note were originally attached certain coupon notes presumably for the payment of interest upon interest not due at the date of the execution of such coupon notes. There were no coupon notes with the $1,000 note, and therefore the trial court certainly erred in treating the two contracts as the same and in holding the $1,000 transaction usurious. The new agreement: Now, our usury laws have been repeatedly construed by this court, but nowhere do we observe that it has had under consideration the question of the parties themselves by subsequent agreement, removing from their original contract the taint of usury. As we have already seen, these parties met together at Montpelier, Idaho, on November 25, 1899, with full knowledge of all the facts and for the purpose of correcting their mistakes. They virtually made a new contract, which

was intended to relate back in point of time to the date of the original; their business relationships were changed. The Whitmans practically withdrew from the company, as stockholders; their stock was surrendered and canceled; they were no longer stockholders in or members of the company; they could receive no more credits or checks for the earnings of that stock. On the other hand, the company not only canceled and surrendered the premium notes and mortgages and the coupon notes and indorsed the credits of $150 on the $800 note, and of fifty dollars on the $1,000 note, but remitted all interest then due. The monthly payments were discontinued, and it was specifically agreed that the payment of $650 on the $800 note and of $950 on the $1,000 note, with a rate of interest which was then legal, should satisfy and discharge the entire indebtedness. The business connection of these parties was thus altered from an "entangling alliance" to the simple relation of debtor and creditor. Such was the status of these obligations at the time suit was commenced. Our proposition, accordingly, is that all this operated to purge these contracts of any usury which might have theretofore been attached to them. (Webb on Usury, secs. 311, 312, 481, 483, 484; *Barnes v. Hedley*, 2 Taunt. 184; *Wright v. Wheeler*, 1 Camp. 165; *Gray v. Fowler*, 1 H. Black. 462; *Phillips v. Columbus City Bldg. Assn.*, 53 Iowa, 719, 6 N. W. 121; *De Wolf v. Johnson*, 10 Wheat. 367, 6 L. ed. 343, 349; *Vahlberg v. Keaton*, 51 Ark. 534, 14 Am. St. Rep. 81, 11 S. W. 878; *Morehouse v. Second Nat. Bank*, 98 N. Y. 503.) Where a usurious obligation has been canceled and a new one given for the valid debt, an agreement that a security given for the former shall stand as security for the latter is valid and enforceable in equity. (*Martin v. Hall*, 9 Gratt. (Va.) 8; *Warwick v. Dawes*, 26 N. J. Eq. 548.) Estoppel: If, then, the contracts were purged of usury, the defendants were estopped to set it up as a defense. (Webb on Usury, sec. 44; 27 Am. & Eng. Ency. of Law, 957, and citations.) Where the defense of usury is interposed, the burden of proof is on the defendant. (*Haughwout v. Garrison*, 69 N. Y. 339; *Holladay v. Holladay*, 13 Or. 523, 11 Pac. 260, 12 Pac. 821; *Thurston v. Cornell*, 38 N. Y. 281.)

Glenn & Gough, for Respondents.

Interest at the rate of nine per cent per annum was paid monthly on face value of the notes, while the principal indebtedness was being reduced monthly by payments on stock. Such a transaction was usurious. (*Stevens v. Home Sav. etc. Assn.*, 5 Idaho, 741, 51 Pac. 779; *Fidelity Sav. Assn. v. Shea*, 6 Idaho, 405, 55 Pac. 1022.) Counsel for appellants, impliedly conceding that the contracts sued on were originally usurious, seek to establish a contract on or about November 25, 1895, between appellant company and the Whitmans by the terms of which these contracts were purged of usury. There is no evidence proving that this agreement was made for the purpose of purging these contracts of usury. Conceding that the agreement was made for the purpose of purging the contracts of usury, was such a purpose thereby accomplished? The agreement was that the two premium trust deeds should be canceled and a credit of fifty dollars given on the $1,000 note, and a credit of $150 given on the $800 note. Were these sufficient credits to purge the contracts of usury? Forty-three monthly payments of twenty-nine dollars and seventy cents each, including payments on stock and interest, were made on this indebtedness. Giving these monthly credits and calculating interest at eighteen per cent per annum, the highest rate then allowed by law, on the face value of the notes, and there were not sufficient credits given on these notes at the time of this settlement to purge same of usury. Had the credits given in this settlement been sufficient to so purge the contracts of usury, still the agreement was of no binding force nor effect. 27 American and English Encyclopedia of Law, 964, states clearly what is necessary to purge contracts of usury. (Webb on Usury, secs. 481-485.) That the burden is on the defendant to prove an illegal intent where the defense of usury is interposed. (27 Am. & Eng. Ency. of Law, 925, 926; *Levy v. Gadsby*, 3 Cranch, 180; *Maine Bank v. Butte*, 9 Mass. 55; *Bank of Salinas v. Alvord*, 31 N. Y. 473; *Drury v. Wolf*, 134 Ill. 294, 25 N. E. 626.)

QUARLES, C. J.—This action was commenced by appellants to obtain judgment foreclosing two trust deeeds executed by the respondents Martha J. Whitman and Marcus F. Whitman to secure two certain loans made by the Western Loan and Savings Company in the first instance. By novation the appellant became the owner, and new trust deeds were executed. The record is voluminous, and the findings of fact are quite lengthy. The trial court found the contracts usurious, and the findings favor the respondents in the main. The original transaction shows an utter disregard of the usury statutes of this state. Compound interest was provided for by way of coupon notes for monthly interest, each of which coupon notes for interest drew interest after its maturity. Large premiums were demanded and extorted by the lender in order that the debtors, the Whitmans, might obtain the loans. The transactions were unquestionably usurious. The assignments of error are many, but a careful consideration of the record shows us that they are without merit in the main. It is not necessary to review each action of the trial court excepted to in order to reach a determination of this case upon its real merits. The court found that the principal of the debts had been fully paid, except the sum of twenty-two dollars and sixty-five cents upon one loan, and the sum of forty dollars and sixty cents upon the other, and that respondents had broken their obligation in said trust deeds contained, by failing to pay taxes for the year of 1901, and that same were paid by appellants in the sum of thirty-one dollars and thirty-five cents, and entered a judgment of foreclosure for the amount due to appellants, ninety-four dollars and fifty cents. The respondent Gray made a loan to the respondents Whitman, and took a mortgage upon said premises as security, subsequent to the execution of said trust deeds to appellant. After the execution of the mortgage to respondent Gray upon the same premises, the appellants and the respondents Whitman met together and made an arrangement between themselves for the purpose of purging the original transactions of usury, and made what is called in the record a "compromise agreement." After this so-called compromise agreement was made, the respondent Gray sued on his mortgage debt, and ob-

tained a foreclosure decree against the respondents Whitman, foreclosing his mortgage; and at decretal sale thereunder he purchased the premises described in said trust deeds, in his mortgage, and in the complaint herein, for the sum of $915.95. Appellants were not parties to the last-named action. The decree herein adjudges the rights of respondent Gray, subject to the said lien of appellants for ninety-four dollars and fifty cents.

The real question here is whether by the so-called compromise agreement the transactions between appellants and the Whitmans were purged of usury, so as to leave the amount agreed upon to be due to appellants from the Whitmans a lien secured by said trust deeds as against respondent Gray? But we will take the argument of the appellant in their written brief, where it is first asked: "Was this suit brought upon a contract which was usurious at the commencement of this action?" Then, after showing that the original indebtedness was, $1,800, appellant says: "The total payments were twenty-seven dollars per month on the entire loan of $1,800. This would be just eighteen per cent per annum on the $1,800—a rate which was at that time legal and authorized by the interest laws. of Idaho. When the Whitmans paid this, they were simply paying the interest on the loan. They had the $1,800 all the time, less commissions which had a consideration of their own." By the term "commissions" we presume appellants' able counsel means the premiums exacted in order to secure the two loans, which were in one case eighty dollars cash retained, and a mortgage for $400, and in the other $100 cash retained, and a mortgage for $500, making $1,080 in all, or more than one-half of the amount of the loans. Can there be any question about the usurious character of the transactions in the first instance? We think not, and say there is no doubt that they were usurious. Being usurious, the trust deeds secured the principal of the loans, but secured no interest or costs. See the following cases decided by this court: *Stevens v. Association,* 5 Idaho, 741, 51 Pac. 779; *Fidelity Sav. Assn. v. Shea,* 6 Idaho, 405, 55 Pac. 1022. Under the statute, every payment made, whether as a premium for obtaining the loan, upon the

interest, or upon the principal, is to be credited upon the principal of the debt. Now, securing only the principal of the debt, the contracts being usurious, the law applying all payments to the extinguishment of the debt, can the parties, by agreement between themselves, remove the usurious character of the transactions, and make the trust deeds liens for something that they were not liens for prior to such agreement, as against a third party whose rights will be affected thereby? We think not. Respondent Gray was not a party to the so-called compromise agreement. That agreement could not, in law, and did not, extend the obligations of the trust deeds so as to make the same a lien for a single dollar that they did not secure prior to such agreement. Section 3351 of the Revised Statutes provides that "a mortgage can be created, renewed, or extended only by writing, executed with the formalities required in the case of a grant or conveyance of real property." These trust deeds executed to secure the payment of loans are mortgages. Hence the lien of same could not be extended by the so-called compromise agreement, especially as against the respondent Gray.

We find no error in the record, wherefore the judgment is affirmed. Costs awarded to respondents.

Sullivan and Stockslager, JJ., concur.

### ON REHEARING.

(January 20, 1903.)

STOCKSLAGER, J.—Appellants, in their petition for a rehearing, say: "We are fully convinced that the voluminous record, and the confusing, conflicting, and in many instances unsatisfactory evidence presented by such record, has misled the court, and that the opinion . . . . is based on a state of facts which the record does not support, and that such opinion does neither directly nor indirectly refer to or consider other questions presented by the record, which we believe are of controlling importance. Further, the decision in this cause practically overrules the decision of this court in *Anderson v. Mortgage Co.,* ante, p. 418, 69 Pac. 130." As suggested, the record is a

voluminous one, containing two hundred and nineteen pages; but when it is stripped of the pleadings, which contain as exhibits the two mortgages, two trust deeds, with the other exhibits, findings of fact, conclusions of law, and the judgment, but little remains of the record.  Counsel for appellants in the hearing assigned thirty errors, but in the argument they say: "The general question is, Was this suit brought upon a contract which was usurious at the commencement of this suit?" and argue the two questions (that is, Was the old contract usurious as to the $1,000 note?), practically admitting that the $800 note was usurious.  They then urge upon the court that even if the old contracts were usurious, the parties purged them of any taint of usury by the new contract entered into at Montpelier, Idaho, on the 25th day of November, 1899.  It is true, in the brief of appellants it is said: "It will be seen herefrom that appellants rely chiefly upon the insufficiency of the evidence in this case, other enumerated errors being incidental; but, not waiving these, the appellants rely upon and reserve the right to argue orally all the other errors assigned in this brief as such, the same as though they had been fully discussed herein."  The statement of counsel for respondent in their brief is practically the same as that of counsel for appellants.  They say: "The general question is, Was this suit brought upon a contract which was usurious at the commencement of this action?"  No other question was urged upon the court, both parties seemingly being content to have the single question of usury passed upon.  We fully agree with counsel in their briefs that it was the controlling question in the case, and the opinion prepared by Chief Justice Quarles was in harmony with the views of his associates.

Counsel who now represent appellants urge that other important questions were involved and should have been passed upon by the court.  We cannot agree with this contention, under the circumstances as they then existed and now exist in this case.  Section 3818 of the Revised Statutes says: "The court may reverse, affirm or modify any order or judgment appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had.

Its judgment must be remitted to the court from which the appeal was taken. The decisions of the court shall be given in writing; and in giving a decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case presented upon such appeal and necessary to the final determination of the case." The case was tried in the lower court on the theory of usury in all the contracts by respondents, and by the appellants on the theory that if there was usury in the original contracts, or either of them, it was purged by the contracts of November 25, 1895. It was argued and submitted in this court on the same theory. The opinion was written on that theory, and dealt with that question, as we view it, fully and fairly. We do not modify the opinion in the least, in the case of *Anderson v. Mortgage Co., supra.* Very different conditions exist, as may be observed by reading the two opinions. The record in the Anderson case disclosed that Anderson bought the land covered by the mortgage, subject to the usurious contract, and agreed to pay the same to the mortgagee, and, in settling with the mortgagor, deducted all that could be claimed, including the usury, upon the usurious contracts, and then, in a suit in equity, asked the court to remove the cloud from his title by declaring the mortgage void by reason of the usurious clause. This the court refused to do.

Counsel for appellants submit numerous figures in an effort to convince us that no usury was contained in the contracts—especially the $1,000 note. We have carefully considered their figures, and the findings of the trial court, and also a table of figures submitted by respondents in their brief, purporting to show the amount of payments, and the interest on each of said notes at the time of such payments. The correctness of this computation has not been questioned by the appellants, either in the hearing in this court, or in the application for a rehearing; hence we conclude that they concede the computation to be correct. Our examination leads us to believe the figures to be correct, or practically so; and, if so, there was usury in both contracts, and it was not purged by the contract of November 25, 1899.

Points decided.

Inasmuch as the judgment will not be reversed and remanded for a new trial, we do not deem it necessary to pass upon each assignment of error separately. Nevertheless, we have considered them, and find no reversible error. A rehearing is therefore denied.

Sullivan, C. J., concurs.

Ailshie, J., not being a member of the court at the time the cause was heard, took no part in this opinion on petition for rehearing.