[No. 15785.  Department One.  July 26, 1920.]

ROBINSON, THIEME & MORRIS, *Appellant,* v.
H. C. WHITTIER *et al., Respondents.*[1]

USURY (11)—WHAT CONSTITUTES—AGREEMENT FOR SERVICES TO BE RENDERED BY LENDER. A charge of $1,000 for a loan of $2,250, which was included in notes of the borrower and was to bear interest, is an usurious transaction, although the parties signed an instrument which provided for services to be rendered by the lender, such contract being indefinite as to time and kind of services rendered, and it appeared that the services actually rendered were of no practical value and that the agreement amounted merely to a shift or device to cover illegal interest on money loaned.

CHATTEL MORTGAGES (18, 24)—VALIDITY—AFFIDAVIT AND RECORDING—EFFECT OF REACKNOWLEDGMENT. A chattel mortgage which was not filed within ten days from the time of execution, though duly acknowledged and accompanied by the affidavit of the mortgagor, is not validated by a reacknowledgment and a redating and filing, without a resigning or the making of an affidavit of good faith by the mortgagor, since the statute, Rem. Code, §§ 3660, 3661, requires a strict compliance with all essential requirements, without which the mortgage can have no validity as against creditors.

SAME (46)—AFFIDAVIT AND RECORDING—VALIDITY—EFFECT OF POSSESSION BY MORTGAGEE. In such a case, it cannot be claimed that the taking possession of the property by the mortgagee before the rights of creditors accrued would validate the mortgage, the evidence merely showing that certain chattels were removed by an agent of the mortgagee at the direction of the mortgagor and were wrongfully taken to a place other than that intended, but not under the care of the mortgagee, and that he knew nothing of the removal of the goods and never had possession.

Appeal from a judgment of the superior court for King county, Ronald, J., entered September 15, 1919, upon findings in favor of the defendants, in an action

[1]Reported in 191 Pac. 763.

on promissory notes and to foreclose a chattel mortgage, tried to the court.   Affirmed.

*Roberts & Skeel* and *L. B. Schwellenbach,* for appellant.

*Gates & Helsell* and *Van Dyke & Thomas,* for respondents.

MITCHELL, J.—This is an action upon four promissory notes aggregating $3,250, and to foreclose a chattel mortgage to secure the same, given by H. C. Whittier to the plaintiff.   Fairbanks-Morse & Company and Mill & Mine Supply Company were made parties defendant because they had taken possession of certain of the chattels covered by the mortgage.   Defendant Whittier answered with the defense of usury, and the other defendants pleaded usury and a failure to file the chattel mortgage within ten days after its execution and delivery.   Upon the trial, the defenses were satisfactorily proved, and from the judgment to that effect, plaintiff has appealed.

The notes, in the total sum of $3,250, bearing eight per cent interest per annum, were dated August 2, 1918, and were made payable at several dates from August 15 to October 15, 1918.   It is conceded that Whittier received only $2,250.   Appellant claims the transaction was not usurious and attempts to vindicate the additional $1,000 (which by being included in the notes was to bear interest) upon the claim that it was intended as pay to appellant for services to be rendered, according to the terms of a separate writing therefor signed by Whittier at that time.   Whittier was engaged in a small logging business in King county.   He became financially embarrassed.   He applied to appellant for a loan, explaining his condition. Appellant was engaged in the real estate, loan and in-

surance business in Seattle. Whittier asked for a loan of $2,000, but finally decided on $2,250. George R. Thieme, who conducted the negotiations for the appellant, made Whittier come back several times, and finally Whittier told him that, rather than fall down on the proposition, he could afford to and would pay $1,000 for the loan. Then the notes and mortgage were prepared and given; and at the same time, upon requirement of the appellant, there was signed by both parties the written instrument in question, wherein appellant agreed "to visit the timber operations of the party of the first part from time to time, inspect the operations, advise regarding purchase of equipment, cooperate in making of sales, and generally give first party the benefit of the business judgment and experience of the party of the second part."

In support of the legality of this agreement, it is argued by appellant that, if the circumstances attendant upon the making of a loan may require any kind of services to be rendered to the borrower, for such services rendered in good faith the lender may properly require compensation, in addition to a reasonable amount of interest upon the money loaned. The argument may be conceded, since the proposition contained therein admits the quality or test of good faith. A money lender, bent upon violating the rule of public policy contained in the statute against usury, not infrequently resorts to the subterfuge of a contemporaneous contract for pay for services rendered or to be rendered by the lender, or for profits earned upon a transaction other than the making of the loan, to conceal the true nature of the transaction. The form of the agreement is immaterial; and as was written upon this subject, in *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998:

"But we have steadfastly held that any device, however specious, to defeat the law will not be tolerated, and this, too, whether it is made the subject of proof or is apparent from the admitted facts."

The contract, couched in vague and general terms as to the kind of services to be rendered, is indefinite as to time. If measured by the length of time the notes were to run, then appellant was to receive $1,000 and interest out of ten weeks' output of this small logging business. Whittier failed and ceased logging operations about the last of August. In proof of the good faith of the contract for services, appellant testified to what it actually did. There is some dispute in this regard, but we are satisfied, as evidently the trial court was, that it amounted to practically nothing. Thieme, who looked after the matter for the appellant, was inexperienced in conducting logging operations. He visited the camp two or three times before it closed down; for what purpose it is not shown, certainly he neither called for nor upon Whittier upon either of those visits. Whittier testified he had a foreman at the camp and that there was nothing for appellant to do, and that it did not perform any services there. The market for logs was good, with prices going up. Appellant, by one of its officers, claims to have examined a motor truck to be used at the camp about the time the loan was made, but the record shows Whittier had already purchased it. After the camp was shut down, while it is true appellant became active in the matter of the disposition of the logs, its manifest purpose in so doing was to get as much money as possible out of a bad situation, to apply on the loan. Whittier testified the $1,000 "was for interest on the loan." True, that, at the time of having the contract written, he made a statement to the contrary, but we are convinced he did so under pressure of the plan adopted

by the appellant in making the loan. We are satisfied the means employed amounted to a shift or device to cover illegal interest on money loaned and that the transaction was usurious.

Appellant also contends, contrary to the finding of the trial court, that the chattel mortgage was filed within ten days from the time of the execution thereof. The mortgage, to be good against respondents Fairbanks-Morse & Company and Mill & Mine Supply Company, who were creditors, must, under § 3660, Rem. Code, have been accompanied by the affidavit of the mortgagor that it was made in good faith, etc., acknowledged and filed within ten days from the time of the execution thereof, in the office of the county auditor. The facts are that, at the time of making the notes, August 2, 1918, Whittier executed and delivered the chattel mortgage, duly acknowledged, and accompanied by his affidavit of good faith, etc. Appellant held it until August 20, 1918, without filing it with the county auditor. On August 20, 1918, Mr. Thieme called Mr. Whittier into his office, told him he had neglected to file the mortgage, and had an understanding with him which was put in writing and signed by Mr. Whittier. The writing, addressed to the appellant, refers to and identifies the chattel mortgage and says:

"I hereby consent to said mortgage being re-dated August 20, 1918, and acknowledgment being re-taken as of this same date."

Then, appearing before a notary public, Mr. Whittier, without signing or resigning the instrument, or any part of it, and without making any affidavit of good faith, etc., simply reacknowledged the mortgage. The notary public changed the date to August 20, and on August 23, 1918, appellant filed the mortgage in the office of the county auditor. The instrument, or any

part of it, has not been in the possession of the mortgagor since it was executed and delivered by him on August 2, 1918. It will be noticed that the statute, § 3660, Rem. Code, makes no difference as to the class of creditors. Those protected are all the creditors— "both existing and subsequent, whether or not they have or claim a lien upon such property." The statute is plain, in requiring the making of the mortgage proper, that it be accompanied by the affidavit of good faith, that it be acknowledged and filed within ten days from the time of the execution thereof. Each and all are essentials, without which it can have no validity against creditors. Section 3661 of the code also provides: "Every such instrument, within ten days from the time of the execution thereof, shall be filed"; that is, an instrument made in observance of and containing the formalities mentioned in the former section. It is not contended that Mr. Whittier was actually sworn on August 20 as to the good faith of the transaction. That he did not intend his former affidavit to be revived or repeated by his conduct on August 20 is made manifest by his writing to the effect that the mortgage be redated and the acknowledgment retaken on that date. The oral proof is to the same effect. He specified certain parts of the old instrument and thereby necessarily excluded another part.

It is claimed by appellant, however, that the affidavit, having been actually made on August 2, was sufficient under the statute. Our attention is called to the case of *Allen v. American Loan & Trust Co.*, 79 Fed. 695, wherein the chattel mortgage statute of this state, as it then existed, was considered. In that case, an instrument which covered both real and personal property had been executed without an affidavit of good faith and recorded only as a real estate mort-

gage. Later the mortgagor executed an affidavit of good faith, caused the same to be attached to the mortgage, and it was thereafter duly recorded as a chattel mortgage. The court held the legal effect of what was done equal to a rewriting, resigning and reacknowledgment of the instrument. That is, by his act of attaching a new instrument to the old one and delivering it, he thereby impliedly made the instrument, in all of its parts, a new one as of that date. The present case is distinguishable, for here nothing new was attached to the instrument, nor was there any new delivery, and by a familiar rule of construction, Whittier, by his writing and conduct pursuant thereto, excluded the remaking or redating of the affidavit of good faith.

Further, appellant relies upon the cases of *Engleright v. Annesser,* 19 Ohio C. C. 406, and *Perry v. Ruttan,* 10 U. C. Q. B. 637. Each of those cases considered a chattel mortgage statute that required the mortgagee to make the affidavit of good faith, and in each case the affidavit had been made prior to filing, but on a date different from that of the execution of the mortgage. In each case it was contended by the creditor that a proper construction of the statute required the mortgagee to make the affidavit at the time the mortgage was executed. In each case the statute, different from ours, contained no provision with reference to the time within which the instrument should be filed after it was executed, acknowledged and accompanied with the affidavit of good faith. In each case the decision was against the creditor. In the Ohio case, the court observed that the statute was silent as to when the affidavit should be made, while in the Upper Canada case, where the affidavit was made some days later than the mortgage and just before filing it, it was aptly said that such course was calculated to advance,

rather than defeat, the object which the legislature had in view. If an affidavit of good faith by the mortgagor which antedates the filing by a period of time in excess of that provided by the statute within which the instrument must be filed is to be held sufficient, then the object which the legislature had in view would be defeated rather than advanced. The subject is covered by the statute, the terms of which must control.

Lastly, it is contended that, even if the mortgage was invalid, the taking of possession of the property by appellant before any rights of respondent creditors accrued would cure such invalidity. We do not find that the appellant ever took possession of the property involved, nor does the finding of the trial court upon that subject so declare. Upon closing down the logging camp, appellant's drayman, for, and under the directions of, Mr. Whittier, took certain chattels from the camp to be stored, as directed by Mr. Whittier, in Seattle, looking to an adjustment of his affairs among all the creditors. On arriving in Seattle, the drayman, contrary to the instructions of Mr. Whittier, and surreptitiously, diverted the things to some place at or near Monroe, Washington, not under the care of appellant. The next day, upon learning of the location of the articles, Mr. Whittier, with respondent creditors, took possession of the articles, and at that time delivered to each of the respondent creditors those articles that were purchased from him and for which he had not been paid. Appellant's testimony shows it knew nothing of, and did not authorize, the removal of the goods from the logging camp. Under these circumstances, there was no possession by appellant, hence the rule relied on has no application here.

Judgment affirmed.

HOLCOMB, C. J., MAIN, TOLMAN, and PARKER, JJ., concur.