468 P.2d 42

Cecil S. WOOD and Edna M. Wood, husband
and wife, Plaintiffs-Respondents,

v.

Kenneth R. SADLER and Jeannine E. Sadler,
husband and wife, Defendants-
Appellants,

and

Blu-Chilla, Inc., a Wyoming corporation;
and Nick T. Tower and Myrtle T. Tow-
er, husband and wife, Defendants.

No. 10461.

Supreme Court of Idaho.

April 9, 1970.

Brauner, Fuller & Doolittle, Caldwell, for defendants-appellants.

Weeks & Davis, Nampa, for plaintiffs-respondents.

McQUADE, Justice.

Plaintiffs-respondents, Cecil S. Wood and Edna M. Wood, brought this action to foreclose a mortgage on real property, which secured a $22,257 note, executed by defendants-appellants Kenneth R. Sadler and Jeannine E. Sadler in May and June, 1964. Defendants-appellants replied with a variety of defenses and a counterclaim alleging that respondent Cecil Wood had charged usurious interest on an obligation which underlay the note in this action.

Upon trial, in October, 1968, the district court took the action under advisement until a transcript was made and briefs and cross-briefs were filed. In March, 1969, the court below entered findings of fact and conclusions of law favorable to respondents and entered judgment and a decree of foreclosure against appellants. From that judgment appellants appeal.

Prior to May, 1963, Kenneth Sadler, and an associate named Lucas, in their capacity as chief officers of Blu-Chilla, Inc., a Wyoming corporation, and Mountain States Loan, a Wyoming corporation, sought to obtain a loan for those corporations. After a lengthy and unsuccessful search for the money, they were able to persuade respondent, Cecil Wood, to lend them what they needed. In May, 1963, Wood borrowed $50,000 from a bank at six per cent interest and loaned this sum to Blu-Chilla, Inc. and Lucas and Sadler individually at eight per cent interest. The note provided that the $50,000 plus the eight per cent per annum interest was payable within eighteen months in installments of at least $4,000 per month. On May 10, 1963, "a security agreement" was entered into between Wood and Lucas (for the corporation and himself) which, *inter alia,* recited the obligation in the terms of the note plus two per cent per month (later reduced to one per cent per month) "commissions for services rendered and to be rendered." Although Sadler signed the note in Idaho, the rest of this loan transaction was consummated in Wyoming.

In October, 1963, Wood loaned an additional $12,000 to Blu-Chilla, Inc. This was a short-term loan providing for installments of $3,000 plus interest payable every forty-five days. It was also on the same terms as specified in the May security agreement.

On December 2, 1964, because the first two loans were not paid according to their terms, a new note was executed as settlement of the two preceding. The new note was for $44,919.23, and included unpaid interest, principal, and commission. The un-

paid principal was computed to be $36,346.-53. The unpaid interest was computed to be $390.00. The unpaid commission was computed to be $8,182.70. This note provided that there would be twelve installments at eight per cent per annum. Each installment was to equal at least $2,000. The first installment was due thirteen days after the making of the note. Sadler signed this note. This note was also subject to the "commission" charge. It was contemporaneous with the making of this note that the two per cent "commission" was modified to one per cent per month. This modification was meant to cover the entire series of transactions extending back to May, 1963.

In May, 1965, after Lucas and Sadler had a falling out and the December, 1964, note was not paid, the note and mortgage at issue in this action were executed. Lucas and Sadler each assumed individual responsibility for one-half of the unpaid principal and interest on the December, 1964, note. This amounted to an assumption of a $22,257 debt by each of them. Wood testified that $4,000 of the $22,257 which Sadler assumed as his half of the Blu-Chilla, Inc. debt covered commissions computed at one per cent per month. Lucas has since paid the principal and interest owed on his May, 1965, note.

It has been stipulated that the following amounts had been paid to Wood prior to trial: from May, 1963, to December, 1964, $30,654.17 was paid on the principal, interest and commission on the $50,000 and the $12,000 notes. From December, 1964, to May 1965, $4,500 was paid. From May, 1965 to the time of the stipulation prior to trial in this action, $2,232.50 had been paid by Sadler on his note. $458.35 was collected from one Harold Willman by Wood through an action brought by Wood in Wyoming to foreclose on a portion of the security which he originally held on the $50,000 note. Most of the negotiations for these various transactions were carried out in Wyoming. All of the notes, from the $50,000 note of May, 1963, to the $22,257 note of May, 1965, were made payable in Wyoming.

On the basis of these facts, the trial court concluded that the commissions of two per cent per month which were reduced to one per cent per month did not amount to usurious interest. It was the opinion of the trial court that the "commissions" were in consideration of "services rendered and to be rendered," especially a sale of the credit of Wood when the credit rating of Lucas, Sadler, and Blu-Chilla, Inc. was so poor that a direct loan could not be obtained, even with a solvent co-signer. For the reasons set out hereinafter, we hold that this conclusion was in error.

At the outset we are confronted with the problem of choosing the law applicable to this action. The multiple transactions involved herein established substantial relationships with both the State of Wyoming and the State of Idaho. The usual conflicts of law rule in usury cases is that the forum will choose the law of any state with which the contract has a substantial relationship and under which its validity will be sustained.[1] That rule does not apply to this case, because we hold that this loan was usurious as a matter of the general usury laws of either state. The rule which governs the choice of law for this action is, however, a corollary to the one stated above,

> "If a contract would be usurious under the general usury statutes of all states to which it has a substantial relationship, the forum will apply the usury statute of that state which imposes the lightest penalty."[2]

---

1. Restatement (Second) of Conflicts of Laws § 203(2) (Proposed Official Draft 1969); accord, e. g., Fahs v. Martin, 224 F.2d 387, 397 (5th Cir. 1955); State v. Rivers, 206 Minn. 85, 287 N.W. 790

(1939); see Dairy Equipment Co. of Utah v. Boehme, 92 Idaho 301, 306, 442 P.2d 437, 442 (1968).

2. Restatement (Second) of Conflicts of Laws § 203, Comment d (Proposed Of-

The parties have stipulated that the statutory law of the State of Wyoming which was at all times relevant to this action may be found in 5 Wyo.Stat.1957, § 13–476 (fixing the contract rate of interest at ten per cent per annum), and § 13–482,

> "*When contracts void.*—If any greater rate of interest than is hereinbefore allowed shall be contracted for or received, or reserved, the contract shall not therefore be void; but if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if any interest shal 'have been paid thereon, judgment shall be for the principal, deducting interest paid; provided, the acts and dealings of an agent in the loaning of money, shall bind the principal, and in all cases where there is an illegal interest taken, reserved or contracted for by the transaction of the agent, the principal will be held thereby as if he had done the same in person." (1965 replacement volume).

The penalty for usury in Wyoming, under the above statutes, is appreciably more lenient than that prescribed by I.C. § 28–22–

107. Thus, the law of Wyoming governs this action.

 The district court found that this loan transaction [3] was not tainted with usury, because the two per cent, later one per cent, per month commissions were given in consideration of "services rendered and to be rendered." We believe that this finding was erroneous as a matter of law.

██ A "services" contract, of the sort involved in this action, readily lends itself to use as a shift to avoid the usury laws. As the Supreme Court of Washington has said,

> "A money lender bent upon violating the rule of public policy contained in the statute against usury not infrequently resorts to the subterfuge of a contemporaneous contract for pay for services rendered or to be rendered by the lender, or for profits earned upon a transaction other than the making of the loan, to conceal the true nature of the transaction." [4]

We will not hesitate to pierce a device or form which is designed to circumvent the usury laws in order to reach the economic substance of a transaction.[5]

 The trial court found that Wood performed the "services" for which he re-

---

ficial Draft, 1969); *accord*, Wiltsek v. Anglo-American Properties, Inc., 277 F. Supp. 78, 81 (S.D.N.Y.1967); Hawkins v. Ringel, 231 N.Y.S.2d 476, 478 (Sup. Ct., 1962), rvsd. on other grounds 19 A.D. 2d 649, 242 N.Y.S.2d 616 (2d Dept.1963).

3. Where, as here, there are several notes which are merely renewals or settlements of original transactions alleged to be usurious, the same parties are involved throughout, and there is no new consideration, all of the transactions will be considered as one for purposes of the usury laws. Martin v. Ajax Construction Co., 124 Cal.App.2d 425, 269 P.2d 132, 135 (1954); Hecker v. Putney, 196 S.W.2d 442, 447 (Mo.App.1946); Osborne v. Fridrich, 134 Mo.App. 449, 114 S.W. 1045, 1046–1048 (1908); Hazard v. Smith, 21 Vt. 123 (1849).

Although Sadler was not a signatory of the security agreement, he is a party who was expected to be bound by that agreement. He does not stand in the posture of

a stranger to the note who has, in bad faith, purchased a cause of action. He, instead, stands as the party upon whom the true burden of the debt has fallen as an accommodation endorser or guarantor of the obligations of Blu-Chilla, Inc. He may, therefore, avail himself of the defense of usury. Martin v. Ajax Construction Co., *supra*, n. 3; Beacham v. Carr, 122 Fla. 736, 166 So. 456 (1936); Osborne v. Fridrich, *supra*, n. 3; Faison v. Grandy, 128 N.C. 438, 38 S.E. 897 (1901).

4. Robinson, Thieme & Morris v. Whittier, 112 Wash. 6, 8, 191 P. 763, 764 (1920).

5. Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412–415, 412 P.2d 586, 591–592 (1966); *accord*, Vee Bee Service Co. v. Household Finance Corp., 51 N.Y.S.2d 590, 597 (Sup.Ct.1944); Terry Trading Corp. v. Barsky, 210 Cal. 428, 432, 292 P. 474, 475 (1930); *see* Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738 (1955).

ceived the "commission" by selling his credit to Blu-Chilla, Inc. and appellants. This conclusion is based on an erroneous understanding of the legal concept of a "sale of credit." On the question of sales or loans of credit a leading case is Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942), wherein the Supreme Court of Texas distinguished between a lawful sale of credit and transactions of the sort with which we are confronted in this action.

"It is insisted by the defendant that the commission charged by him constituted a lawful charge for the sale and advancement of his credit, to enable the borrower to obtain the money. It may be accepted as true that where one acts in good faith, and not for the purpose of concealing a usurious loan made by him, he may sell his credit to a borrower for a consideration; and to that end may endorse, guarantee, or become surety for the payment of a loan made to the borrower by a third person at the highest lawful rate of interest, without rendering either the contract for the sale of his credit or the loan made by the third party usurious. * * * But, again, in order for such a transaction to be legal, the sale of the credit must be made for the purpose of enabling the borrower to obtain the money from a third party, or the transaction must be something other than a mere loan of money. The fact that the party has to pledge his credit or collateral with a third party in order to obtain the funds which he himself lends to the borrower does not authorize him to charge the commission in addition to the highest legal rate of interest. Chak-

ales v. Djiovanides, 161 Va. 48, 170 S.E. 848. If he makes the loan himself, whatever trouble or hazard is incurred by him in securing the money from a third party in order to enable him to make the loan is in contemplation of the law fully compensated for by the payment of the lawful rate of interest."[6]

Thus, a sale or loan of credit is a transaction whereby a third party, while not directly advancing funds to a borrower or becoming primarily liable on a note, enables a borrower to obtain a loan directly from a lender.[7] We have no such transaction in this action. Wood borrowed funds in his own name, and, when he loaned them to Blu-Chilla, Inc., he was the only obligee. These commissions can not, therefore, be upheld against a charge of usury on the grounds that they were consideration for a sale of Wood's credit.

The trial court also found that Wood performed a variety of services for Blu-Chilla, Inc., subsequent to the making of the security agreement, which constituted additional consideration for the "commission." These were services either in the field of aviation or in public relations. They were not stated in the commission agreement, and Wood testified that they were not specifically contemplated by the parties at the time that agreement was made. These "services" bore no direct relationship to the loan, yet the "commissions" purportedly charged as compensation for them, were wholly contingent on the amount owed to Wood and the length of time it was owing. The "commissions" were not at all contingent on the value of the services which were rendered by

6. Greever v. Persky, supra, 140 Tex. at 67–68, 165 S.W.2d at 711.

7. Grady v. Price, 94 Ariz. 252, 255, 383 P.2d 173, 175 (1963); Cutri Enterprises v. Pan American Bank of Miami, 115 So. 2d 592, 596 (Fla.App.1959); Bowden v. Gabel, 105 Mont. 477, 486, 76 P.2d 334, 337 (1937); Chakales v. Djiovanides, 161 Va. 48, 90, 170 S.E. 848, 862 (1933).

In order for the respondents to have supported their contention that the commissions were only "finder's fees" or "brokerage" charges they would similarly have had to have shown that Wood was only an intermediary between the actual obligors and obligees. Ware v. Paxton, 266 S.W.2d 218, 225 (Tex.Civ.App.1954); Greever v. Persky, supra, 140 Tex. at 67–68, 165 S.W.2d at 711; Richeson v. Wood, 158 Va. 269, 285, 163 S.E. 339, 344, (1932).

Wood. The record, read in the light most favorable to respondents, fails to establish that there was an agreement to compensate Wood for these subsequent services which were unrelated to the loan transaction of which the "security agreement" was a part.

■ Although this Court will not disturb the findings of fact of a trial court if they are supported by competent and substantial evidence, if upon examination of a record we discover that there is not substantial evidence to support the trial court's finding it must be set aside.[8] This is such an instance. Because of the facts outlined above we must hold that the "commissions" were, in reality, interest paid to Wood for the loan which he made to Blu-Chilla, Inc.[9] Those "commissions" of one per cent per month, when added to the nominal interest rate of eight per cent per annum, bring the rate of interest charged by Wood to twenty per cent per annum. That rate is substantially in excess of the lawful interest rates of both Idaho and Wyoming.

Prior to trial Wood had collected $37,-845.02 on his original loans of $50,000 and $12,000. He testified at trial that Lucas had paid all of the principal and interest due on his $22,257 note. This indicates that Wood has at least received $60,102.02 of the $62,000 principal which he originally loaned to Blu-Chilla, Inc., Sadler, and Lucas. Because Lucas paid eight per cent interest on the $22,257 note Wood has, in all probability, realized more than $62,000.

■ Under 5 Wyo.Stat.1957, § 13–482, *supra*, if usury is found, the principal is all that is due on the loan, unless some usurious interst has already been paid. In the latter case the debtor has the right to recover such interest. Although there is no Wyoming authority cited, we believe that only a debtor who has actually paid the lender usurious interest may recover it, and, thus, the appellants can have no recovery for any interest Lucas might have paid on his half of the debt even if such payments brought the total amount paid to over $62,000. Under the Wyoming statutes appellants are, however, entitled to recover their costs.

We reverse and remand the case to the district court to determine if Wood has recovered the entire principal sums of the two loans which he made. If he has not, the court should determine the amount still owing and render judgment in that amount for respondents. We remand for action on these particular questions only.

Costs to appellants.

McFADDEN, C. J., and DONALDSON, SHEPARD, and SPEAR, JJ., concur.

8. *Compare* Jensen v. Chandler, 77 Idaho 303, 308, 291 P.2d 1116 (1956), *with* Dent v. Hardware Mutual Casualty Co., 86 Idaho 427, 433, 388 P.2d 89, 92 (1963).

9. See Grady v. Price, *supra*, n. 7, 94 Ariz. at 252, 383 P.2d 176; *cf.* Bowden v. Gabel, *supra*, n. 7, 105 Mont. at 485, 76 P.2d 336; Madsen v. Whitman, 8 Idaho 762, 767, 71 P. 152, 153 (1902); Terry Trading Corp. v. Barsky, *supra*, n. 5, 210 Cal. at 432, 292 P. 475–476; Chakales v. Djiovanides, *supra*, n. 7, 161 Va. at 89–90, 170 S.E. 862 (leading case). *But see generally* Boyd v. Head, 92 Idaho 389, 397, 443 P.2d 473, 481 (1968).