SILING et al. v. HENDRICKSON et al., Appellants.

Division One, February 22, 1906.

1. **FRAUDULENT CONVEYANCE: From Husband to Wife.** Generally, where a husband buys property and has the title placed in his wife, the presumption is that it was intended as a provision for her. And if the husband is not indebted at the time, he has a right to convey property to his wife as a pure gift; and his subsequent creditor cannot have the property sold under an attachment to pay his debts.

2. ——: ——: **Husband as Trustee.** And when property is conveyed to the wife by the husband and thereafter is exchanged for other property, and the title to the latter is taken in the name of the husband without her consent or knowledge, he holds it, as against his subsequent creditors who did not rely upon his ownership or know that the title was in his name, as trustee for her, and after her death, without knowledge of the transaction, as trustee for her heirs.

3. **ATTACHMENT: Non-resident: Notice to Tenant.** A judgment against a non-resident, in an attachment suit, brought by publication, without personal service upon the defendant landowner, is void, unless notice was given to the tenant in possession, as the statute requires.

4. ——: ——: ——: **Knowledge of Tenant.** And where no notice was given the tenant in possession, that defect in the attachment proceeding is not cured by a showing that the tenant had actual knowledge that the suit was brought. The statute, in requiring notice to be served on the tenant, is mandatory.

5. **JURISDICTION:** Shown by Parol. It is, not the policy of the law of this State to permit a jurisdictional fact to rest in parol, such as the knowledge of the tenant in possession that attachment proceedings have been begun against his landlord's premises.

6. **RESULTING TRUST:** Reforming Deed: Mistake: Allegations and Proof. Where the facts show that a husband bought lots and had them conveyed to his wife, at a time when he was entirely free from debt, and afterwards they were exchanged for farm land and the title taken in the name of the husband, a resulting trust arose in her favor, and after her death in favor of her heirs, and, if sufficient facts are stated in the petition upon which to predicate relief upon that ground, such a decree will not be denied on the ground that the petition also alleges that the title was placed in his name by mistake of the scrivener and no such mistake was shown by the evidence.

7. ———: Void Attachment: Tender. The purchaser at a void attachment sale of property which the attachment defendant held as trustee for his child, is not entitled, as a condition of the right of the rightful owner (the child) to have the sale set aside and to have a decree establishing a resulting trust therein in her favor, to require her to tender into court the money he paid for the property at the attachment sale, since the property rightfully belonged to her and the money paid for the property by the purchaser did not go to extinguish any debt that she owed, but the debt of her trustee.

8. ———: ———: ———: Suit by Trustee: Innocent Purchaser. And where the suit is brought by the trustee to have the void attachment proceeding against him and the sale thereunder set aside, and to have a resulting trust decreed in favor of his wife or child to whom the deed should have been made instead of to him, the purchaser at the attachment sale is not entitled to require the plaintiff to pay to him the money he paid in extinguishing plaintiff's debt, if such purchaser was plaintiff's tenant and did not notify plaintiff of the pendency of the attachment suit, and prevented other persons from bidding at the sale by promising them money not to bid.

Appeal from Cass Circuit Court.—*Hon. W. L. Jarrott,*
Judge.

Affirmed.

*Summers & Summers* for appellants.

(1) The demurrer to the petition should have been sustained. As to who is the plaintiff must be determ-

ined by the caption and the allegations in the petition taken together. Adams v. Cowles, 95 Mo. 507; Charley v. Kelley, 120 Mo. 143; R. S. 1899, sec. 539; Pattison's Mo. Code Pleading, secs. 246, 250. In equity, the misjoinder of one as a party plaintiff could be reached by a general demurrer to the whole bill for want of equity. Abbott's Trial Briefs of Pleadings, pp. 153, 154. (2). Pleadings of plaintiff and decree have no evidence to sustain them. Plaintiff must recover on case made by his pleadings. Reed v. Bott, 100 Mo. 62; Lenox v. Harrison, 88 Mo. 491; Kennedy v. Daniels, 20 Mo. 104; 22 Ency. Pl. & Pr., pp. 530 and 602; 18 Ency. Pl. & Pr., pp. 805 and 855. (3) A deed absolute on its face cannot be shown to be an express trust. Curd v. Brown, 148 Mo. 82; Wacker v. Wacker, 147 Mo. 246; Hillman v. Allen, 145 Mo. 638. Express trust must be proved by writing. Lane v. Ewing, 31 Mo. 75; Cornelius v. Smith, 55 Mo. 528; Price v. Kane, 112 Mo. 412. George M. Siling was not trustee under the pleadings. Hillman v. Allen, 145 Mo. 644; Wilson v. Polk Co., 112 Mo. 126; Springfield to use v. Weaver, 137 Mo. 670. (4) Under the allegations of the petition Mitchell was Mamie Siling's tenant. The York attachment suit was against Geo. M. Siling and affected his interest only in the land. Then Mamie Siling's tenant did not have to be notified in suit against Geo. M. Siling. (5) The latter part of the petition is neither a proceeding to set aside judgment for fraud by bill in equity, because no fraud is alleged; nor is it a statutory proceeding to set aside or review judgment on service by publication. Neither does it show that a cloud is cast upon title of Mamie M. Siling; because the pleadings show that the attachment proceeding of York was against a party who, according to the petition had no interest in the land, if Mamie Siling, as they claim, owned the land. Irvin v. Legh, 102 Mo. 201; Cruin v. Cruin, 162 Mo. 544; Cox v. Boyce, 152 Mo. 576; Reed v. Nichols, 158 Mo. 624; Covington v. Chamberlin, 156 Mo. 574; Smoot v. Judd, 161 Mo. 673;

Hashler v. Schoop, 70 Mo. App. 469; Dunklin Co. v. Clark, 51 Mo. 60; Holland v. Johnson, 80 Mo. 34. The petition in this case is not a bill for review of judgment obtained by publication under statutes. Lindell Real Estate Co. v. Lindell, 142 Mo. 61; R. S. 1899, secs. 777, 780. Nor is it one in equity to set aside judgment for fraud, as was the case in Walters v. Schofield, 167 Mo. 537, because they would have to allege fraud in obtaining judgment as they did there. Neither can it be sustained as bill in equity to set aside judgment. The attachment, judgment and deeds cast no cloud on title of Mamie Siling because the allegations in the petition show it was attachment against a party who had no interest in title of Mamie Siling, and hence it could not be a cloud on Mamie Siling's title under the allegations of the petition. Dunklin Co. v. Clark, 51 Mo. 60; Holland v. Johnson, 80 Mo. 34; Johnson v. Cottingham Ironing Machine Co., 8 Mo. App. 575; McRee v. Gardner, 131 Mo. 599; Graves v. Ewart, 99 Mo. 13; Mason v. Black, 87 Mo. 329; Clark v. Ins. Co., 52 Mo. 272; Peak v. Laugh, 49 Mo. 162. (6) Incompetency of Siling's evidence. One party dead. Agency cannot be proved by admissions or statements of a supposed agent. Bank v. Morris, 125 Mo. 350; Abbott's Trial Brief (Mode of Proving Facts), pp. 127 and 128. (7) Siling's evidence incompetent under pleadings. Evidence was admitted under claim of agency. Failing in that, there was no foundation for its admission, as petition alleged a contract between Libby Siling and Hendrickson. Testimony showed a trade between Geo. M. Siling and Hendrickson. (8) When did the home become Mrs. Siling's? He paid for it. Being engaged in mercantile business he may have put title in her name to hold for himself in event of adversity in business. If so, then her joining in deed to convey it placed title where it originally was. She could give it back to him. (9) If everything that plaintiff claims as to land being Libby Siling's were true, and even if the court could have de-

clared it hers under the evidence, yet that would leave
a life estate in Geo. M. Siling, subject to seizure and
sale.  The judgment in the attachment suit in any event
is valid on its face and could be set aside by Geo. M. Sil-
ing only, in proper proceedings for that purpose under
proper showing.  Authorities under point 5.   (10) This
is not a case to reform deed and if it had been there was
nothing to reform.  Until Hendrickson was requested
to make a new deed and refused, they have no standing
in equity, but this petition is not to reform and hence
the question of the alleged defects in the deed was not
an issue under the petition.  Jennings v. Brizeadine, 44
Mo. 332; Gamble v. Daugherty, 71 Mo. 589.   (11)  If,
as the plaintiff contends, the present suit is really a suit
in which the court had a right to set aside the York
judgment and deed, etc., then the complainant would
have to place himself under the rule required at the
hands of equity and restore all the money which went
to extinguish his note and debt with interest.  Mitchell
bid at the sale and the money he paid was credited on
the debt of Siling due Mrs. York.  Yeaman v. Lepp,
167 Mo. 72; Schafer v. Causey, 76 Mo. 365; Kline v. Vo-
gel, 90 Mo. 239; Boggs v. Hargrave, 16 Cal. 559; Bone
v. Terrell, 113 Mo. 175; Freeman on Void Judicial
Sales (4 Ed.), sec. 49; Maupin on Marketable Titles to
Real Estate, sec. 50.

*Chas. W. Sloan* for respondents.

(1)  Mitchell and York, after their demurrers were
overruled and Mitchell's motion to strike out parts of
petition was also overruled, abandoned all questions
raised by the demurrer or motion by answering over
and going to trial on the merits.  Pickering v. Tel. Co.,
47 Mo. 457; State to use v. Sappington, 68 Mo. 454;
West v. McMullen, 112 Mo. 405; Haughey v. Joyce, 41
Mo. App. 569; Scovil v. Glasner, 79 Mo. 449; Wilson v.

Railroad, 67 Mo. App. 443; Sisk v. Ins. Co., 95 Mo. App. 708; Walters v. Hamilton, 75 Mo. App. 237; Murphy v. Railroad, 96 Mo. App. 278; Boyd v. Railroad, 108 Mo. App. 306. (2) Defendant Mitchell was tenant in possession of the land at the time the alleged attachment writ in suit of York v. G. M. Siling was levied, and no notice being given by the sheriff at the time of the levy to said tenant as shown by the sheriff's return, the court acquired no jurisdiction, and the judgment and sheriff's sale were absolutely void as to Geo. M. Siling. Walter v. Scofield, 167 Mo 537. (3) The home of Libby S. Siling having been conveyed to her November 1, 1892, was her separate property. Sec. 6869, R. S. 1889; Bank v. Hageluken, 165 Mo. 443. This property was conveyed to Hendrickson for the land in controversy and title taken to husband without the knowledge of wife—without either her verbal or written consent, and her child, Mamie Siling, was entitled to have the title vested in her, especially so as the husband admits he held it as her trustee. Jones v. Elkins, 143 Mo. 647; James v. Groff, 157 Mo. 421; McGuire v. Allen, 108 Mo. 403; Winn v. Riley, 151 Mo. 67. Assent of wife can not be implied. Hart v. Cook, 151 Mo. 416; Rice v. Shipley, 159 Mo. 399; Broughton v. Brand, 94 Mo. 169; Case v. Espenschied, 169 Mo. 220. (4) There is not one element of estoppel shown by the facts in this case. By no act or word of Geo. M. Siling was Mitchell induced to bid on the land at the sheriff's sale. Bramwell v. Adams, 146 Mo. 83; DeBerry v. Wheeler, 128 Mo. 84; Bright v. Miller, 95 Mo. App. 276; McClain v. Abshire, 72 Mo. App. 390; Nunn v. Carroll, 83 Mo. App. 140; Alkire Grocer Co. v. Ballenger, 137 Mo. 369. (5) The court properly in granting the decree for plaintiffs ordered defendant Mitchell to surrender possession of the land. Baker v. St. Louis, 75 Mo. 671; Woodsworth v. Tanner, 94 Mo. 124; Lander v. Ziehn, 150 Mo. 415; State ex rel. v. Evans, 176 Mo. 327. (6) Geo. M. Siling was not only a competent witness in his own behalf, be-

cause he is a party in interest seeking to set aside the sheriff's sale as well as the judgment against him, but also he acted as agent for his wife in purchasing the land in controversy from Hendrickson. Sec. 4655, R. S. 1899; Stanton v. Ryan, 41 Mo. 510; Hurdy v. Mathews, 42 Mo. 406; Hoerle v. Kren, 65 Mo. 202; Stiffin v. Bauer, 70 Mo. 405; White v. Chaney, 20 Mo. App. 394; Brickworks v. Thompson, 59 Mo. App. 98; Asbury v. Hicklin, 181 Mo. 672; Lecte v. Bank, 115 Mo. 184. Besides, his admissions and testimony were admissible for the protection of the rights of the minor child, Mamie Siling. Boynton v. Miller, 144 Mo. 681; Moeckel v. Heim, 134 Mo. 576; Cramer v. Hurt, 154 Mo. 112; Hach v. Rollins, 158 Mo. 190. (7) As the evidence showed the land was held by Geo. M. Siling as trustee for his minor child, Mamie, in no aspect of the case can the defendant Mitchell subject her land to the payment of the purchase price he bid. Even as to Geo. M. Siling the doctrine of subrogation cannot be invoked by Mitchell to have his purchase money paid back. (a) Mitchell knew Geo. M. Siling had no record title to the land; and he bought at his peril; the rule of *caveat emptor* applied to him. Stephens v. Ellis, 65 Mo. 456; Cashion v. Faina, 47 Mo. 133; Haley v. Bagley, 37 Mo. 363; Estes v. Alexander, 90 Mo. 453; Throckmorton v. Pence, 121 Mo. 57; Plaster v. Grabeel, 160 Mo. 674; Burke v. Brown, 148 Mo. 309. (b) And any mistake or ignorance as to the law could be no ground for relief to him. Ins. Co. v. Enslin, 46 Mo. 202; Campbell v. Clark, 44 Mo. App. 253; Brown v. Fagan, 71 Mo. 563; Price v. Estill, 87 Mo. 378; Norton v. Highleyman, 88 Mo. 621; Chambers v. Jones, 72 Ill. 279. (c) Mitchell was a mere volunteer in bidding at the sheriff's sale; was not a creditor of Geo. M. Siling; did not bid at his request or even with his knowledge and had no interest to protect; hence, could acquire no right of subrogation even if the judgment had been valid. Wooldridge v. Scott, 69 Mo. 669; Evans v. Halleck, 83 Mo. 376; Klei-

mann v. Gieselmann, 114 Mo. 437; Crane v. Noel and Cohn, 103 Mo. App. 128; Sheldon, Subrogation, secs. 3, 240, 241; Roberts v. Best, 172 Mo. 81; Dunn v. Railroad, 45 Mo. App. 37; Imp. Co. v. Jones, 143 Mo. 281. (d) If the debt discharged was not a lien or charge upon the property, the doctrine of subrogation does not apply. Maupin, Marketable Titles, 139. The judgment being absolutely void, there could be no lien. 1 Black on Judgments, sec. 407; Burke v. Brown, 148 Mo. 319; Walter v. Scofield, 167 Mo. 537; Frost v. Atwood, 73 Mich. 67; Bruschke v. Wright, 106 Ill. 187; McHenry v. Schenck, 88 Ill. 357; Atwood v. Frost, 51 Mich. 360; 24 Am. and Eng. Ency. Law, 257. (e) One guilty of fraud in purchase of land is never allowed reimbursement for money paid by him in the purchase, or even for repairs, or incumbrances afterwards paid by him. Allen v. Berry, 50 Mo. 90; Johnson v. Goldsby, 32 Mo. App. 565; Lampkin v. Bank, 98 Mo. App. 244; 24 Am. and Eng. Ency. Law, 268-269; McGaskey v. Graff, 23 Pa. St. 321; Guckenheimer v. Angevine, 81 N. Y. 394; Davis v. Leopold, 87 N. Y. 620; Maupin, Marketable Titles, 141; Sheldon, Subrogation, sec. 44; Freeman, Void Judicial Sales (2 Ed.), sec. 54; Devine v. Harkness, 17 N. E. 52; In Re Hays' Estate, 159 Pa. St. 381; Imp. Co. v. Jones, 143 Mo. 281. (f) The record shows that before Mitchell bid he agreed with Dr. Bennett to pay him $37.50 not to bid against him at the sale. He agreed also with Lawder that the latter would only bid amount of judgment and costs. This was illegal and should defeat any right of subrogation. Any agreement to prevent competition in bidding is illegal and just ground to set aside a sale. Hook v. Turner, 22 Mo. 33; Wooten v. Hinkle, 20 Mo. 290; Durfee v. Moran, 57 Mo. 374; 1 Am. and Eng Ency. Law, 997.

MARSHALL, J.—This is a bill in equity to reform a deed made on the 21st of February, 1898, by John T. Hendrickson and wife to George M. Siling, by having

Libbie S. Siling made the grantee therein instead of George M. Siling, or else to compel said Hendrickson to execute a deed to Libbie S. Siling, for the north half of the southeast quarter of section 28, township 43, range 33, except thirteen acres off the south side of the northeast one-fourth of southeast quarter thereof, in Cass county, Missouri, and to declare void a proceeding and judgment in attachment wherein the defendant Lucy J. York attached said land as the property of George M. Siling and caused it to be sold under said attachment judgment, and the defendant Charles A. Mitchell became the purchaser thereof; and to set aside the sheriff's deed under said attachment judgment to said Mitchell, and to divest the title out of said Mitchell and out of said Hendrickson and out of said George M. Siling, and to vest the same in the plaintiff, Mamie S. Siling, the sole surviving heir of said Libbie S. Siling.

There was a judgment for the plaintiffs, and the defendants, York and Mitchell, appealed.

### THE ISSUES.

The petition states that on the 1st of November, 1892, Libbie S. Siling became the owner of lots 10, 11, 12 and 13 in block 12 in the town of Stewart City, commonly called Drexel, in Cass county, Missouri, as her separate property; that afterwards, on the 21st of February, 1898, Mrs. Siling and her husband, George M., conveyed said lots to the defendant Hendrickson; in consideration of which Hendrickson agreed and promised to sell and convey to Mrs. Siling the property here involved, subject to two deeds of trust thereon, aggregating $700; that Hendrickson undertook so to do, but by mistake of the draftsman the conveyance from Hendrickson and wife was made to George M. Siling instead of to Libbie S. Siling; that said deed, so executed, was never delivered by Hendrickson to Mrs. Siling or to anyone else for her in her lifetime, and she never, in

fact, saw the same; that Mrs. Siling died on the 8th of April, 1898, leaving surviving her her said husband and the minor plaintiff, Mamie Siling, her only child and heir at law; that the deed from Hendrickson was delivered to George M. Siling about the 10th of May, 1898, and that he, without reading the same, or knowing its contents, delivered it into the custody of one O. K. Reed, then cashier of the bank at Drexel, where it remained until just prior to the institution of this suit, when George M. Siling learned, for the first time, the true character and contents of the same; that Mrs. Siling never, in her lifetime, in writing or otherwise, authorized Hendrickson and wife to execute a deed to said land to any other person than herself, and that prior to her death she had no knowledge of the contents of said deed; that immediately after the death of his wife George M. Siling, as trustee for Mamie Siling, took possession of said lands and rented the same and applied the rents therefrom to the payment of the mortgages on said land; that about the 2nd of February, 1901, Mr. Siling leased the land to the defendant Charles A. Mitchell, for one year, commencing March 1st, 1901, and ending March 1st, 1902, and said Mitchell entered into possession of said premises under the terms of the lease; that on the 25th of September, 1902, on petition of the minor, Mamie Siling, the circuit court of Cass county appointed George M. Siling her next friend to prosecute this action, who filed his written consent thereto; that on the 20th of May, 1901, the defendant, Lucy J York, instituted a suit by attachment against G. M. Siling, in the circuit court of Cass county, on a note for $250, dated April 30th, 1898; that a writ of attachment was issued therein and was levied upon the land in controversy by the sheriff seizing the land; that the petition in the attachment case, as well as the affidavit therein, charged that the defendant G. M. Siling was a non-resident of the State of Missouri; that an order of publication was made in said cause against G.

M. Siling and published in the Drexel Star, a newspaper published in Cass county; that G. M. Siling was never personally served with any summons or process in said cause and never appeared to such action and was not a resident of Missouri at any time while said action was pending, and had no notice whatever of said suit or action until sometime after November 4th, 1901; that on the 13th of September, 1901, judgment was entered in favor of Mrs. York against G. M. Siling for $324.24; that afterwards on the 13th of September, 1901, a special execution against the property here involved was issued on said judgment and the interest of G. M. Siling therein was sold by the sheriff and purchased by the defendant Charles A. Mitchell, for the sum of $373.14; that on the 4th of November, 1901, the sheriff executed a deed to said land to said Mitchell, and that Mitchell has been claiming title to the land ever since, and refuses to acknowledge the plaintiffs, or either of them, as landlord; that at the time of the levy of the writ of attachment the sheriff gave no notice to the tenant in possession and did not give such notice at any time before the return day of the writ of attachment; that at the date of the attachment said G. M. Siling had no interest in said land and claimed none, and that the circuit court never acquired any jurisdiction over the person of said G. M. Siling nor of the real estate; that the judgment, execution and sale thereunder were null and void and constitute a cloud on the title of the plaintiff Mamie Siling; that the defendant Hendrickson is a non-resident of the State; that the plaintiff, Mamie Siling, and her co-plaintiff as trustee, are entitled to have specifically enforced the contract entered into between the defendant Hendrickson and Libbie S. Siling for the conveyance of said land.

The prayer of the petition is for a decree enforcing the contract, divesting title out of Hendrickson; setting aside the judgment in favor of Mrs. York against Mr. Siling, the execution and sale thereunder and the

deed from the sheriff to the defendant Mitchell, and divesting title out of Mitchell and vesting it in Mamie Siling, and for an order requiring Mitchell to surrender the possession to the plaintiff, and for further relief.

The petition originally contained a second count in ejectment, but on the 5th of January, 1903, the plaintiffs dismissed that count. The defendants York and Mitchell were personally served with a summons in the case. The sheriff's return certified that Hendrickson could not be found in Cass county. There was an order of publication as to him, which was duly published, but he failed to appear and made default. The defendants, Mitchell and York, appeared and answered and defended the suit. Their answers were general denials, coupled with a special plea alleging the validity of the attachment proceedings and the title of Mitchell obtained thereunder; denying that Mrs. Siling bought the property from Hendrickson, or that Hendrickson agreed to make the deed to her but by mistake made it to her husband, and alleged the truth to be that the purchase price was paid by the husband and the deed made to him pursuant to contract, and that he was the real owner of the land at the time of the attachment and of the sale thereunder, and that the amount bid by Mitchell was applied to the payment of the debt from Mr. Siling to Mrs. York, and that Mr. Siling has made no tender of the amount so bid and applied, and is therefore not entitled to any equitable relief.

The defendants Mitchell and York further plead that George M. Siling was estopped because he had knowledge of the pendency of the attachment suit prior to the rendition of the judgment, and had actual knowledge that judgment had been rendered against the land and execution issued thereon, and that the defendant Mitchell had purchased the same upon execution, and that thereafter Mr. Siling refused to pay the taxes, or to pay the interest on the lien or mortgage on said land, and never made any demand on Mitchell for the posses-

sion of the land, or for any rent therefor, but acquiesced in the sale and by his consent and conduct ratified the same, and is thereby estopped to set up any want of jurisdiction or other irregularity in the sale.

The reply is a general denial.

The case made is this:

About 1890, George M. Siling, with his wife and child, came to Drexel, Missouri, and purchased a piece of property and erected a building thereon for hotel purposes, and conducted a hotel, his wife assisting him in so doing. Afterwards he traded the hotel for a farm in Kansas, and then sold the farm. Afterwards, on the 1st of November, 1892, he used $2,500 of the proceeds of the sale of the farm for the purchase of lots 10, 11, 12 and 13 in Stewart City, commonly called Drexel, and had the conveyance therefor made to his wife, Libbie S. Siling. He afterwards built a house and store thereon, and with the remainder of the proceeds of the Kansas farm he purchased a stock of goods, called a racket stock, and he and his family lived on the premises and carried on the business, his wife assisting therein. The defendant Hendrickson owned the sixty-seven-acre farm here in controversy, lying in Cass county. The parties agreed to exchange the town lots and house and store for the farm. Hendrickson says they valued the farm at $2,500, the town lots and residence at $1,200, and the stock of goods at $600, and as there was a mortgage of $700 on the farm, which Mrs. Siling was to assume, that made the value of the town lots, stock of goods and mortgage equal to the value of the farm. At that time Mrs. Siling was in very bad health; was suffering from consumption and little hope of her recovery was entertained. Mr. Siling, without the knowledge or consent of his wife, directed that the deed from Hendrickson to the farm be made to him, for the purpose, as he says, of holding it for the benefit of their child, Mamie Siling. Mrs. Siling executed the deed to the town property to Hendrickson, but according to the tes-

timony of her husband she never saw the deed for the farm from Hendrickson to her husband; never had the deed in her possession and never knew that the conveyance had been made to her husband instead of her, and died without ever becoming aware of that fact, or having authorized the deed to be made to her husband. The deed from Hendrickson to Siling was retained by the notary, because the inventory of the stock had not been completed and the consideration had not been inserted in the deed. Mr. Siling says the notary told him he had some further work to do on the deed before delivering it and that it remained in the notary's hands from the date of its execution, on the 21st of February, 1898, until the 10th of May, 1898. In the meantime, Mrs. Siling had died. As the mortgages on the farm were made by Hendrickson, and he was liable primarily therefor, it was arranged and agreed that he should rent the farm for a term of two years at $200 a year rental and should apply the rent to the payment of the mortgages on the land, and this was done. After his wife's death, Mr. Siling received the deed to the farm, on the 10th of May, 1898, and as he was then about to leave Missouri and go to Oklahoma to live, he delivered the deed to the farm, to Mr. Reed, the cashier of the bank, and asked him to have it recorded. Mr. Reed did not do so, however, and simply kept the deed in his possession. Siling and child then went to Oklahoma, living there and in Kansas and in Colorado continuously thereafter until the time this suit was brought on the 20th of September, 1902. In 1900, Siling leased the land for one year to one Adams at a rental of $175, and applied the proceeds of the rent to the payment of the mortgages on the land and the taxes. In February, 1901, Siling leased the land for one year to the defendant Mitchell for a term commencing March 1, 1901, and ending March 1, 1902. On the 20th of May, 1901, Mrs. York instituted a suit by attachment against G. M. Siling on a note for $250, dated April 30, 1898, and the

land was seized under the attachment writ, as the property of G. M. Siling. The sheriff's return recites that he executed the writ of attachment by levying upon and seizing and attaching all the right, title and interest of the defendant G. M. Siling in the real estate, and by filing with the recorder of Cass county an abstract of the attachment, showing the names of the parties and of debt and date of levy and description of the lands levied on. The defendant Mitchell was at that time tenant in possession of the land. No notice of the attachment was served on him, as required by section 543, Revised Statutes 1889, either ten days before the return day of the writ or at any other time, nor did the sheriff recite the fact of such notice and the name of the tenant in his return. The attachment suit was entitled, "Lucy J. York, plaintiff, against G. M. Siling, defendant," and the order of publication ran against G. M. Siling, and stated that an action had been commenced against him by petition and attachment in the circuit court of Cass county, the object and general nature of which was to enforce the payment and collection of $315.42, the amount due on the promissory note executed by him to the plaintiff in the attachment suit on the 30th day of April, 1898, due within one year after date, with interest at eight per cent; "that his property had been attached," and unless he appeared at the next term of the circuit court, judgment would be rendered against him and his property sold to satisfy the same. No description of any property that had been attached was contained in the order of publication. The order of publication was duly published in the Drexel Star. Mr. Siling says that he never saw the order of publication, and never knew or heard that the suit in attachment had been brought against him, until about December, 1901; that in the fall of 1901 he was taken sick with typhoid fever, and his mail was not given to him to read until about the last of December, 1901, at which time he learned that there had been a judgment against

him in the attachment suit, and that the land had been sold, and that Mitchell, the tenant in possession, had become the purchaser. A number of letters were offered and read in evidence, some from Mitchell to Siling, and one from Mitchell's attorney to Siling, and one from Mrs. York's attorney to Mr. Siling, but none of the letters have been produced, either in whole or in substance in the abstract of the record, and therefore this court is in the dark as to their exact contents. Mr. Siling says that the letters he received were simply inquiries as to what he would sell the property for, and Mrs. York's attorney says that his best recollection is that the letter he wrote Mr. Siling was after the judgment had been rendered and before the property was sold, and that he did not tell Mr. Siling that the judgment had been rendered but wanted to know at what price he would sell the land, thinking that Mr. Siling knew, from other sources, the fact that the judgment had been rendered, and would be willing to sell the land at private sale rather than have it sold by the sheriff. The tenant, Mitchell, says that in one of his letters, which was not introduced in evidence, and which Siling says he never received, he told Siling that the attachment suit had been begun. The other letter from Mitchell to Siling and the letter from Mitchell's attorney to Siling, were written after the sheriff's sale, and consisted, principally, according to the oral testimony, of a request that Siling would order the cashier of the bank to turn over the deed from Hendrickson to them, so that it could be placed on record. Siling says he never answered any of those letters, because, after he learned of the sale of the property to Mitchell under the attachment, he intended to come back to Missouri for the purpose of instituting this suit, which he did on the 25th of September, 1902, having immediately previous thereto placed the deed on record. Siling also says that after the institution of this suit he collected the rent from Mitchell for the premises for the year beginning March 1st 1901,

and ending March 1, 1902, and that he had, prior to the trial, paid all the taxes on the land and had paid up the interest on the unpaid portion of the mortgage on the land, and had paid a portion of the mortgage, in addition to what had been extinguished by the application of the rents to the mortgage.

It appeared from the testimony of Mitchell that prior to the sale he had an interview with the attorney of Mrs. York, wherein the attorney stated that Mrs. York was only interested in having the property bring the amount of her judgment, with costs and interest, and would not bid at the sale beyond that amount. It also appeared from Mitchell's testimony that he agreed with Dr. Bennett, that if he could get a good title to the land for the amount of the judgment, interest and costs, and if Dr. Bennett would not bid at the sheriff's sale for the land, he (Mitchell) would pay Dr. Bennett the sum of $37.50.

Upon this showing, the chancellor entered a decree for the plaintiffs, vesting the title in Mamie Siling and divesting it out of Hendrickson and Mitchell, and, as nearly as can be ascertained from the briefs, for the judgment itself is not set out in the abstract of the evidence, also ordered the defendant Mitchell to turn over the possession to Mamie Siling. What other order was contained in the decree is not clear from the abstract in this case, and in the absence of the full terms of the judgment, it is impossible to definitely determine. From this decree Mitchell and Mrs. York appealed.

I.

On the 1st of November, 1892, Mrs. Libbie S. Siling acquired the title to lots 10, 11, 12 and 13 in block 12 in Stewart City, commonly called Drexel, Cass county, Missouri. The consideration for the purchase thereof was paid by her husband. The general rule of law is that where a husband buys property and has

the title placed in the name of his wife, the presumption is that it was intended as a provision for her. At the time of the purchase of the land, Mr. Siling is not shown to have been insolvent, and therefore he had a right to have the land conveyed to his wife as a pure gift. So far as this record discloses, neither at the time the land was purchased in 1892, nor when the buildings were placed thereon, in 1895, was he indebted in any manner whatever. The note to Mrs. York, which afforded the foundation for the attachment suit, was dated on the 30th of April, 1898, which was after the 21st of February, 1898, when the attempted exchange of property took place. At the time of that exchange of property, therefore, Mrs. York was not a creditor of Mr. Siling. The negotiations for the exchange of the town property for the farm were conducted by Mr. Siling. Mrs. Siling at that time was ill with consumption and appears to have been confined to her house. She died on the 8th of April, 1898, just twenty-two days before Siling became indebted to Mrs. York. The consideration for the farm was the town property owned by Mrs. Siling. When the town property was exchanged for the country property Mr. Siling caused the deed to the country property to be made to him instead of to his wife. When he did so, however, he became trustee of the land for the benefit of his wife. It was not an express trust but an implied trust, under the laws of this State. [Rice v. Shipley, 159 Mo. 399.]

Mrs. Siling never knew that the title had been taken in the name of her husband and died in ignorance of that fact. She never, in writing or in any other manner, gave her husband any authority so to do. She, therefore, might, if she had lived, have compelled him to convey to her, or to be declared a trustee for her benefit, but dying in ignorance of the fact she did not do so. The deed from Hendrickson to Mr. Siling was not placed on record until just before the institution of this suit, on the 25th of September, 1902. At the time

Mrs. York extended credit to Mr. Siling, therefore, she did not do so on the faith of his ownership of the land in question, for the records at that time, and continuously thereafter, until after the land was sold under the attachment judgment, remained in Hendrickson, and it does not appear that Mrs. York knew at the time she extended credit to Mr. Siling anything about Mr. Siling having the title to this property in his name. Mr. Siling explains his reason for taking the title in his name instead of his wife's name to be, that his wife was in bad health, not expected long to live, and that he wanted the title in himself so as to be able to handle it for the benefit of their child. Whatever his motives were he had no legal authority to take the title in his name, but, under the circumstances, he was a mere trustee for the benefit of his wife and her heirs.

## II.

The next question which presents itself for adjudication is whether or not, under the circumstances stated, the attachment and judgment thereunder passed a good title to the defendant Mitchell.

It is conceded and uncontradicted that from May, 1898, until September, 1902, Mr. Siling was a non-resident of the State of Missouri. The York suit against him was by attachment. He was not personally served, nor is there any substantial evidence in the case that he ever knew that such a suit had been instituted against him, or that the judgment had been entered, or that the land had been sold until December, 1901, about sixty days after the sale of the land under the attachment judgment. He was notified only by publication. The title acquired by Mitchell at that sale, therefore, depends upon the validity of the attachment proceedings. The sheriff in levying the attachment complied with the requirements of section 543, Revised Statutes 1889, being now paragraph 3 of section 388, Revised Statutes 1899, except that he did not give notice

to the tenant in possession at least ten days before the return day of the writ, and did not state the fact of such notice and the name of the tenant in his return.

The point here involved, and the construction of the statute applicable to such cases, underwent adjudication by this court in Walter v. Scofield, 167 Mo. 1. c. 553, and the previous decisions of this court were there analyzed, with the result that it was held that the circuit court never acquired jurisdiction in the attachment case, and that the judgment and sale thereunder, and the subsequent conveyances arising therefrom were void. In respect to the consequences to the purchaser at such a sale, that case was a much stronger case in favor of the purchaser than is the case at bar, for in that case a third person, an entire stranger to the transaction, became the purchaser, and afterwards other third persons became part owners of the property; while in the case at bar the purchaser was the tenant in possession, and therefore more closely identified with the title. In addition to this, the purchaser in this case, the tenant in possession, has not, by his conduct, entitled himself to any consideration at the hand of any court, for whilst he says he knew of the institution and progress of the attachment suit, and whilst he says he wrote a letter to Mr. Siling before the judgment was entered, telling him of the suit, still, neither the letter nor a copy thereof was preserved or introduced in evidence, and his testimony as to the contents of that letter is not at all persuasive or convincing that he ever wrote such a letter, or if he did write a letter, that it contained information of the institution of the suit. In addition to which, his conduct after the judgment was entered, and prior to the sale, in promising to give Dr. Bennett $37.50 if he would not bid against him at the sheriff's sale, tends strongly to compel a conviction that instead of notifying the owner of the pendency of the suit or of the judgment or contemplated sale, he was actively engaged in an attempt to procure the title to the property

for himself, for $373.14, when it is shown that the property was reasonably worth $2,500.

The defendants seek to avoid the effect of the defects in the proceedings in reference to notice, and of the rule declared in Walter v. Scofield, supra, by showing that although the sheriff did not notify the tenant, as the statute requires, still the tenant had actual notice of the pendency of the suit prior to the rendition of the judgment, and therefore the requirements of the statute were met.

This contention, however, is untenable.

It might with equal propriety be claimed that a court acquired jurisdiction of a defendant, who had not been brought into court by any sort of process, by showing, *dehors* the record, that the defendant actually knew there was a suit pending against him. The requirements of the statute are mandatory, and this is so for wise reasons, to-wit, that the record shall affirmatively show that the notice that the law requires was served upon the defendant, and that the matter of whether or not a defendant had notice should not be allowed to rest in parol, nor subject to the temptation of perjury, not implying, however, the existence of such conditions in this case. It was pointed out in Walter v. Scofield, supra, that the notice to the tenant in possession was as essential to conferring jurisdiction in attachments against non-residents, as was the publication of the notice in the papers, and it was said that the notice to the tenant would probably be a better notice to the owner than the publication, for presumably the tenant would notify the owner. Generally the presumption would obtain, but the facts in this case clearly show that even presumptions of law may not always consist with actual facts, and that tenants may be found, like the tenant Mitchell, who would fail to notify the landlord, for ulterior purposes of their own. It is no answer to this to say that if the notice had been served, the tenant

might likewise fail to notify the landlord. The statute is mandatory and requires the notice to be served on the tenant, and unless the statute is obeyed the knowledge of the tenant, outside of the notice required, does not comply with nor fulfill the requirements of the law. If the framers of the statute had intended that the mere knowledge of the tenant of the pendency of the suit should obviate the necessity of the service of the notice, they would have so written the law. That they did not so intend is clearly proved by the fact that they did not so write the law, and such failure so to write the law was not merely an oversight, for such a law would leave the question of whether the court acquired jurisdiction over the owner by notice to the tenant, to depend upon the testimony of witnesses, and would leave the record silent on that subject, so that in case of the death of the tenant, or of the officer serving the writ, it would be difficult to establish the fact by parol testimony. Cases might arise, if the law were so written, in which the officer would testify to the knowledge of the tenant, and the tenant would deny any such knowledge, and the matter would then rest upon which witness the court believed. It is not the policy of the law of this State to permit a jurisdictional fact thus to rest in parol, and it was to exclude a possibility of such a thing that the law-makers required the sheriff to give notice to the tenant in possession at least ten days before the return day of the writ, and to state the fact of such notice and the name of the tenant in his return, and thus, in this way, to have a record, as to notice, which would be binding as to all parties.

It follows from the foregoing that the circuit court never acquired jurisdiction in the attachment suit of York v. Siling, and that all the proceedings therein, including the judgment and the sale by the sheriff, and the sheriff's deed to Mitchell, were absolutely void.

### III.

This leaves the case, therefore, the same as if there had never been an attachment suit, or a sale thereunder, and the same as if it was a suit against Hendrickson and George M. Siling and Mamie Siling for the reformation of the deed from Hendrickson to Siling.

It is true, as defendants claim, that the bill alleges that the contract was that the deed should be made to Mrs. Siling, and that by mistake of the scrivener, Mr. Siling was named as the grantee, and that the evidence shows that Mr. Siling directed the deed to be made to him. But it does not follow, as defendants claim, that for this reason all relief should be denied to Mamie Siling, the heir of Mrs. Siling. The facts established clearly show that Mrs. Siling never knew that the deed had been made to her husband instead of to her, and that she never authorized the deed to be made in that way. If she was still alive there can be no doubt that she could maintain an action against Mr. Siling and Mr. Hendrickson for the reformation of the deed and have it corrected so as to vest the title in her and divest it out of her husband; and Mamie Siling, her heir, has the same rights as her mother would have had. Neither is it at all important or material that Mr. Siling purchased the property with his own money, for he gave it to his wife at a time, when, in law, he was entitled to do so without defrauding any existing creditors. When, therefore, the exchange of the property was made and Mr. Siling took the conveyance in his own name instead of in his wife's name, he became a mere trustee for her benefit. In other words, her property was given in exchange for this property, and therefore a resulting trust was created in her favor by operation of law, and Mr. Siling became simply the trustee of the property. Abundant facts are stated in the petition upon which to predicate relief upon this ground, and therefore the failure to prove the allegations of the

petition as to the mistake of the scrivener, does not prevent a recovery by the plaintiff in this case.

## IV.

The defendant Mitchell, however, claims that the amount he paid for the property at the attachment sale has not been tendered to him, and that relief cannot be accorded the plaintiff, in equity, in the absence of such a tender.

Two all-sufficient reasons suggest themselves why this contention should not be allowed, to-wit: first, this is purely a suit by Mamie Siling to recover property which, of right, belongs to her, and she owed Mrs. York nothing. Therefore, the money paid by Mitchell for the purchase of the property did not go to extinguish any debt that Mamie Siling owed. Mamie Siling could have maintained this action against her father and the other defendants as defendants, and would have been entitled to the relief sought without tendering to Mitchell any sum which he had paid for the land and which had been applied to the extinguishment of her father's debt to Mrs. York. Instead of making Mr. Siling a party defendant, he was made a party plaintiff, but that does not alter Mamie Siling's rights in the case. Second, but even if this were an action by Mr. Siling, it cannot be fairly said that the conclusion reached by the trial court was erroneous because it did not require Mr. Siling to refund to Mitchell the amount he had paid at the sheriff's sale for the property. The best complexion that can be put on the case is that there was a conflict in the testimony between that of Mr. Siling and of Mitchell as to whether or not Mitchell notified Mr. Siling of the pendency of the suit before the judgment. The chancellor believed Mr. Siling's testimony. Much of the evidence that was produced before the trial court, including the correspondence, is not embodied in the abstract of the record. Therefore this court cannot adjudge the trial court

to be in error in its finding of fact as to this question. If Mr. Siling's testimony is true, that Mr. Mitchell did not notify him of the attachment suit until after he had purchased the property, then that fact, together with Mitchell's conduct in attempting to prevent others from bidding at the sale, disentitled Mitchell to ask equitable relief. The conduct of Mitchell here spoken of refers solely to the agreement he made with Dr. Bennett. The conduct of Mrs. York and her attorney, so far as the record discloses, was perfectly legal and proper, and no wrong in respect to bidding at the sale can be attributed to them. Ordinarily where one stands by and sees his property sold for the payment of his debts he cannot be heard to question the sale; and ordinarily where an innocent person has purchased property of the defendant in an execution, and the money is applied by the sheriff to the extinguishment of the defendant's indebtedness, a court of equity will not permit the defendant to set aside the sale without refunding to the innocent party the amount he so paid, and which has been so applied. But that manifestly just rule of law ought not to apply to a case like this, where the purchaser at the sale was the tenant of the owner, and failed to notify the owner of the proceedings, as he was in duty bound to do, and where he, furthermore, prevented other persons from bidding at the sale, and procured title to himself for a sum infinitely less than the value of the property. A court of equity will not regard such a purchaser as an innocent party, and will leave him in the bed he made for himself.

There is no evidence whatever of any estoppel or ratification by Mr. Siling, and there could be none as to Mamie Siling for she is still a minor, therefore, the plea of estoppel and ratification is without merit in this case.

For the foregoing reasons the judgment of the circuit court is affirmed.

All concur.