OSBORNE, Appellant, v. FRIDRICH, Respondent.

**St. Louis Court of Appeals, December 15, 1908.**

1. **BILLS AND NOTES: Accommodation Indorser: Surety: Usury.** An accommodation indorser is in effect a surety and, when sued as such before a justice of the peace, may interpose the defense of usury to the amount of usurious interest exacted, under section 3709, Revised Statutes 1899.

2. ——————: **Consideration.** Where an action was brought upon a note upon which a sufficient amount of usurious interest had been paid to discharge it, and the suit was settled by the defendant giving another note for the amount claimed, and where the plaintiff knew that sufficient usury had been paid to discharge the note so that the suit was not brought in good faith, the last mentioned note was without consideration.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED.

*H. A. & C. R. Hamilton* for appellant.

(1)   The compromise of a doubtful claim is a sufficient consideration for a promissory note.   After a compromise has been entered into in good faith, the merits of the original controversy are immaterial, in an action to enforce the satisfaction.   6 Am. and Eng. Ency. of Law (2 Ed.), p. 714; 8 Cyc., pp. 517, 518; Draper v. Owsley, 15 Mo. 613; Stephens v. Spiers, 25 Mo. 386; Rawlins v. Rawlins, 102 Mo. 563; McCormack v. Railroad, 154 Mo. 191; Pickel v. Chamber of Commerce, 10 Mo. App. 191; Buffington v. Land Co., 25 Mo. App. 492; King v. Insurance Co., 36 Mo. App. 128; Marshall & Michel v. Larkin's Sons, 82 Mo. App. 635; Supply Co. v. Meysenberg, 85 Mo. App. 337; Wonderly v. Christian, 91 Mo. App. 158; Slover v. Rock, 96 Mo. App. 335; Feeter v. Weber, 78 N. Y. 334; Dunbar v. Tirey (Tex.), 17 S. W. Rep. 1116; Bennett v. Paine, 5 Watts 259; Cobb v. Arnold, 8 Metcalf 403; Sentell v. Stark, 37 La. Ann. 679.   (2)   When the indorser of a promissory note tainted by usury becomes the maker of a note, given to discharge the one, usurious as between the original parties, the new note being executed at a lawful rate of interest and received in payment of the former, he cannot set up the usury of the original note as a defense to the collection of the note of which he is maker.   Coleman v. Cole, 96 Mo. App. 22; Bank v. Hottenstein, 89 Pa. St. 328; Craig v. Butler, 9 Mich. 21; Tenny v. Porter, 61 Ark. 329.

*John W. Drabelle, Wm. A. Kinnerk,* and *Morrow & Kelley* for respondent.

(1)   Either want of consideration or failure of consideration is a complete defense to a note.   R. S. 1899, sec. 645; Catterlin v. Lusk, 98 Mo. App. 188; Holmes v. Farris, 97 Mo. App. 315.   The negotiable instrument act approved April 10, 1905, simply reenacted the common law, which it provided: "Section

29: Absence or failure of consideration is a matter of defense as against any person not a holder in due course." Laws Missouri 1905, p. 247; 4 Am. and Eng. Ency. Law (2 Ed.), p. 193; 8 Cyc., p. 31. (2) The plaintiff is not a holder in due course and took the note with notice that the defense of want of consideration could be made and took it subject to such defense. Laws of Missouri, 1905, pp. 249, 250; Clough v. Holden, 115 Mo. 336; Mayes v. Robinson, 93 Mo. 114. (3) The note for which the note sued on was given had been paid in full by payments, renewal fees and usurious interest. It could not be made the basis of a new note. It is not sufficient to support a new contract. Briscoe v. Kinealy, 8 Mo. App. 76; 7 Cyc., 718; Warren v. Whitney, 24 Me. 561; Phelps v. Bennett, 57 Me. 491; Smith v. Boruff, 75 Ind. 412; Pettyjohn v. Liedscher, 92 Ga. 149; Hancock v. Twyman, 19 Ky. Law 2006, 45 S. W. 68; Ingersoll v. Martin, 58 Md. 67; Brigham v. Holden, 146 Mass. 259; Hale v. Rice, 124 Mass. 292; Mason v. Campbell, 27 Minn. 54; Grant v. Porter, 63 N. H. 229; Stafford v. Bacon, 1 Hill (N. Y.) 532; Sullivan v. Collins, 18 Ia. 228.

GOODE, J.—This action is on a promissory note dated November 5, 1906, due two months after date, for the sum of three hundred dollars with eight per cent interest, payable to A. L. Shoults, signed by respondent John H. Fridrich, and indorsed by Shoults to appellant. The defenses are want of consideration for the note and usury in the transactions out of which it grew. In 1902 Shoults borrowed some money from John H. Vette on a note with Fridrich as surety. This debt ran along until 1904, when cash to pay it was borrowed from C. W. McFarland, Osborne and Fridrich executing a note to McFarland similar to those Vette had taken; that is, with Osborne as maker and Fridrich as payee and indorser. The only conclusion to be drawn from the evidence is that Fridrich was an accommoda-

tion indorser and, therefore, in effect, a surety. [Weimer v. Shelton, 9 Mo. 122.] Osborne was connected with McFarland as a party to the transaction. The indebtedness is traced for two years and four months from the first loan by McFarland and Osborn, and during that time Shoults and Fridrich paid them $482.68, either in money or by incorporating accrued interest in renewal notes. The notes were given for thirty days each, and to renew them fifteen dollars a month was charged, plus two dollars and seventy cents. It seems the fifteen dollars was a charge for renewal and the balance was considered interest. An action was instituted before a justice of the peace by Osborne on that one of the successive notes which was dated July 16, 1906. Said action was dismissed on the execution and delivery to Osborne of two notes dated September 4, 1906, in which Fridrich was payee and Shoults maker and indorser. One was for $300 and one for $53. On November 5, 1906, the note in suit was given in lieu of the prior note for $300 of September 4th, and with the note in suit were given two other notes for $45 and $47. Thus it appears usurious charges continued after the settlement; for these small notes were for renewal premiums. On these facts the court found a verdict for respondent, having refused a declaration of law requested by appellant to the effect that if the note in suit was given in lieu of one executed September 4, 1906, which was executed in compromise of an action then pending before a justice of the peace on a prior note, the verdict must be for respondent; also a declaration, that even if the court found appellant had exacted usury from Shoults, the maker of the note dated July 16, 1906, on which respondent was indorser, yet if it further found respondent, on September 4th, in consideration of an extension of time for the payment of said note of July 16th, assumed the debt and executed and delivered his note dated September 4th, due sixty days after date, in payment of the prior note, and thereafter

executed and delivered the note in suit in satisfaction of the note of September 4th, usury exacted of Shoults constituted no defense to appellant's demand.

Under the decision in Weimer v. Shelton, supra, respondent, as surety for Shoults, was entitled to interpose the defense of usury to the action instituted before the justice of the peace on the note of July 16th. The defense was not used, as the case was settled and dismissed without a trial, in consideration of the execution and delivery of the two notes to Osborne, wherein respondent took the position of maker and Shoults that of payee and indorser. In other words, the positions of the parties to the notes of September 4th, and those of November 4th given to renew them, were the reverse of what they had been on the previous notes. The usury exacted after the settlement of the case before the justice, if credited on the principal note, would not suffice to discharge it; and appellant was entitled to a judgment for something, unless the prior usury should likewise be credited on the note in suit, by virtue of the statute. [R. S. 1899, sec. 3709.] Appellant insists this cannot be done because, as said, the dealings subsequent to the settlement were entirely detached from previous dealings and stood on a distinct consideration; whereas respondent says the prior usury had wiped out the debt, and there was no consideration for the notes of September 4th. This is on the theory that our statutes made all the prior agreements to pay usurious interest, void. [Mo. Ann. Stat. 1899, sec. 3708, 3709, 3710.] Not only is usury prohibited, and a defendant when sued for a debt allowed to plead it in defense and have the amount paid for interest in excess of what would have been paid at the lawful rate, credited on the principal, but now, if usury is paid, it may be recovered back from the borrower or his personal representatives. [R. S. 1899, sec. 3708.] The lender can in no case recover more than the principal with lawful interest, after deducting the usurious interest (3709) and a

pledge or mortgage of personal property for a usurious debt, renders the lien invalid. Moreover, usury to the extent it was carried by the appellant is a misdemeanor. [2 Mo. Ann. Stat. 1906, sec. 2358.] Under these statutes it has been held contracts to pay usurious interest are void as to the usury charged; a ruling made prior to the enactment of some of the most stringent provisions of the statutes. [Farmers, etc., Bank v. Harrison, 57 Mo. 503; Vandergrif v. Swinney, 158 Mo. 827; McDowell v. Assn., 175 Mo. 250, 272; Arbuthnot v. Assn., 98 Mo. App. 392.] If respondent and Shoults had interposed the defense of usury to the action before the justice, that case must have been defeated, because the usury already paid would have discharged the debt. Instead of doing so, they settled the action by giving a new note with Fridrich as maker, which appellant says is valid for the reason stated, supra. Respondent answers that the demand filed with the justice was destitute of any merit and therefore its settlement could not be a consideration for a new contract; likening the case to Long v. Towl, 42 Mo. 545; Briscoe v. Kinealy, 8 Mo. App. 76 and Sullivan v. Collins, 18 Ia. 228. In the first case actions before a justice for damages against the defendant for purchasing ore from miners who worked on the plaintiff's land, had been settled and dismissed on the execution of a writing obligatory, wherein the defendant agreed to pay a penalty of five hundred dollars if he paid third persons a greater price for ore than plaintiff was paying, and to sell plaintiff at a certain price all ore thereafter purchased by him. In an action brought for breach of the stipulations, it was held there was no consideration for the agreement, because the suits instituted before the justice of the peace were on wholly unfounded demands, which could form no adequate consideration for a promise. It should be remarked that the purchases of ore which gave occasion for the actions before the justice, occurred when defendant was not bound by a contract

against such purchases and, therefore, in making them, the defendant contravened no right of the plaintiff, but simply exercised his own right to buy ore from persons who offered it for sale. The other two of the cited cases did not involve the settlement of litigation and are not so directly in point. The decision in Long v. Towl is authority for the proposition that a promissory note, or other writing obligatory, executed in compromise of an utterly baseless claim, whether the claim is in litigation or not, is without consideration. [See, too, Wilbur v. Crone, 13 Pick. 224.] But the general doctrine is that the compromise of a doubtful demand, or of a lawsuit, is consideration for a contractual promise then given. [1. Paige, Contracts, 289, 290, 291; Stoddard v. Mix, 19 Conn. 12, 22; Union Bank v. Gray, 30 U. S. 99, 114; Barlow v. Insurance Co., 4 Metc. (Mass.) 270, 274; Clifton v. Owsley, 15 Mo. 613; Stephens v. Spiers, 27 Mo. 386; Rawlins v. Rawlins, 102 Mo. 563; Pickel v. Assn., 10 Mo. App. 191; King v. Insurance Co., 36 Mo. App. 128; Teeter v. Webber, 78 N. Y. 334; Dunbar v. Tive (Tex.), 17 S. W. 1116.] It has been doubted by eminent courts and commentators if the diverse applications of these antinomous rules can be reconciled on any principle. [Armstrong v. Toler, 11 Wheat. 258; 2 Story, Agency (2 Ed.), 425, 426 and note.] The subject was gone over exhaustively in the case last cited, where the controversy was as to whether Toler could recover from Armstrong, money paid the national government on account of goods belonging to Armstrong and others but consigned to Toler, which the government had seized as having been imported contrary to law. Armstrong's goods were turned over to him after seizure and during proceedings to condemn them, on his promise to pay Toler, if the goods should be condemned, a due proportion of what the latter had paid the government. They were condemned, and an action having been instituted by Toler on Armstrong's promise, the defense was raised that the prom-

ise was void because made on an illegal consideration. On the circuit the jury was charged on several hypotheses of facts, but to this general intent: that if goods were illegally imported, as the result of a scheme to consign them to a friend of the owner in order that the friend might take and defend them if brought into jeopardy, he being apprised of the scheme, a bond given by the owner to indemnify him for advances in consequence of any proceeding against the property, would constitute no part of the original transaction, though it purported to be a new contract, for it would be a promise growing out of and connected with the illegal transaction; that there would be, in truth, but one transaction, and the party to whom the promise was made pursuant to such an agreement, would have been a contributor, in effect, to the success of the illegal measure; but if the promise was unconnected with the illegal act and amounted to a new consideration, though the prior illegal act was known to the promisee, it would not be tainted by said act; as if a party should arrange during a war, to smuggle goods of the enemy for his own purposes into the country, and in the same vessel the goods of another should be sent, and this other became surety for the payment of the duties on both lots of goods, or for any expense of prosecution for the illegal importation, such a promise would be no part of the original scheme, but would be a new contract and on a valid consideration unconnected with the illegal act, though remotely caused by it. The charge to the jury was supported by Chief Justice Marshall in a luminous opinion which elucidated clearly the question in hand. But it does not suffice to clear the subject of all difficulty, and, as Judge Story said in the passage cited, the subsequent decisions have not done this. The opinion in Armstrong v. Toler touched upon, but did not consider in every phase of the question, the extent to which the settlement of legal proceedings would constitute a valid consideration for

a new promise. At bottom the good faith of the party asserting a demand in court which is settled and relied on as consideration for a new promise, plays an important part in the validity of the consideration and ought to be the true criterion of validity. The principle of good faith, instead of color of right, has been adopted finally in England and many States of this country, as will be seen in the note to 1 Parsons, Contracts (9 Ed.), bottom page 480. The annotator pronounces the late English rule the sound one, because it determines the validity of the consideration from the standpoint of the parties. The present state of English law on the question is exhibited in the following excerpt from Callisher v. Bischoffsheim, L. R. 5 Q. B. (1869, 1870) 451:

"No doubt it must be taken that there was, in fact, no claim by the plaintiff against the Honduras Government which could be prosecuted by legal proceedings to a successful issue; but this does not vitiate the contract and destroy the validity of what is alleged as the consideration. The authorities clearly establish that if an agreement is made to compromise a disputed claim, forbearance to sue in respect of that claim is a good, consideration; and whether proceedings to enforce the disputed claim have or have not been instituted, makes no difference. If the defendant's contention were adopted, it would result that in no case of a doubtful claim could a compromise be enforced. Every day a compromise is effected on the ground that the party making it has a chance of succeeding in it, and if he *bona fide* believes he has a fair chance of success, he has a reasonable ground for suing, and his forbearance to sue will constitute a good consideration. When such a person forbears to sue he gives up what he believes to be a right of action, and the other party gets an advantage, and, instead of being annoyed with an action, he escapes from the vexations incident to it. The defendant's contention is unsupported by authority.

"It would be another matter if a person made a claim which he knew to be unfounded, and, by a compromise, derived an advantage under it; in that case his conduct would be fraudulent."

If a person who honestly believes he has a good claim against another, brings suit on it and this is compromised and dismissed in consideration of the defendant giving a new promise to pay, it looks like the dismissal of the suit and the granting of further time to pay, ought to be a consideration for the promise based on it, even though the claim was without legal merit.   But it cannot be said that in all the cases the courts have observed this rule, though often they have. [1 Paige, Contracts, secs. 289, 290, 291; Spielberger v. Thompson, 131 Cal. 55; Murphy v. Murphy, 93 Ill. App. 671; County Court v. Hall, 51 S. Va. 269; Rains v. Lee, 36 S. W. 176; Weilage v. Abbott, 90 N. W. 1128.]   The claim on which the new promise is based may have been so palpably without merit that this fact alone convinces the court there is no room for finding it was asserted in the belief that it was a valid obligation; and in rejecting such a settlement as consideration for a new promise, the emphasis is apt to be put on its legal worthlessness rather than the *bona fides* of the claimant.   Frequently the new promise itself and the parties to it, are the same persons who were parties to the former illegal transaction, or else were so intimately connected with it, as to make it obvious the alleged new promise is but a continuation of the old one and therefore tainted with bad faith. The case of Wheeler v. Land Co., 193 Mo. 379, is one in which the compromise of a suit against the county, the suit having no legal basis as the party prosecuting it was presumed to know, was held no consideration for a new undertaking. In the present instance the plaintiff Osborne was a party to all the usurious transactions subsequent to July, 1904, and had been paid on them much more than the three hundred dollars first lent and lawful interest; which goes to show he did not

Osborne v. Fridrich.

believe he had a good demand. The declarations of law requested by appellant left out the element of good faith, and, therefore were rightly refused as not fully hypothesizing the facts appellant was bound to prove to overcome the defense of usury. We do not say the presence of this element would make a settlement valid as a consideration under all circumstances according to the Missouri decisions, but do say that in the present case, where the parties to the note in suit were the original parties, good faith in bringing the suit which was dismissed, is essential. Much stress is laid on the case of Coleman v. Cole, 96 Mo. App. 2, to support the position that when Fridrich became maker of the note, instead of indorser, a new agreement arose to which the defense of usury is untenable. In said case the change of parties was that a guarantor and not a surety became the maker; that is, a person whose promise was distinct from the promise of the first maker; and the question in the case was whether a reply to an answer setting up usury, which reply averred the change of contract by which the guarantor became the maker, was rightly struck out. Said case differs from this in three respects. The party claiming the defense of usury was originally bound by an independent undertaking; the question of good faith in making the contract wherein he was substituted was not in dispute; for the opinion says there was no evidence to show the substitution was made to evade the usury laws; and it did not appear enough usurious interest had been paid on the original debt to discharge it, and hence the creditor could, in good faith, assert the note was still a demand.

The judgment is affirmed. All concur.